Onyx Oils & Resins, Inc., Appellant, *v.* Moss.

Argued March 28, 1951. Before DREW, C. J., STERN, JONES, BELL, LADNER and CHIDSEY, JJ.

D. S. *Thomas,* with him *Campbell, Houck & Thomas,* for appellant.

*George D. Lockhart,* with him *Judd N. Poffinberger, Jr.* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 24, 1951:

The plaintiff corporation, Onyx Oils & Resins. Inc., has appealed from the decree of the Court of Common Pleas of Allegheny County dismissing the plaintiff's exceptions to the adjudication of the chancellor.

Prior to November 4, 1946 the defendant, Morris Moss, owned 200 of a total of 500 shares in the Standard Can Company and one P. W. Hatfield owned the balance of 300 shares. There subsisted between Moss and Hatfield an agreement requiring the survivor to buy the other's shares on the death of the holder. The defendant, anticipating that Hatfield would predecease him, had discussed with Jerome Kleinman, the secretary and treasurer of the plaintiff corporation, acting on its behalf, plans whereby the plaintiff would ultimately purchase 200 of the Hatfield shares for $80,000. It is sufficient for our purposes to note that Kleinman and the defendant had maintained certain business and personal friendship relations for some years prior to the events which are the source of the issues in this case; the plaintiff corporation was for some years a sales agent for the Standard Can Company.

When Hatfield died on November 4, 1946, the defendant undertook the purchase of his 300 shares in the Standard Can Company. To this end various conversations and negotiations ensued whereby the parties sought to resolve the problem of embarking on a joint ownership of the Standard Can Company without the attendant disadvantages of minority ownership which Moss had experienced in relation to Hatfield.

On November 16, 1946, as a result of their various conversations, the plaintiff and the defendant executed a document called an "agreement" whereby the plaintiff turned over to the defendant "the sum of $80,-000.00 to be held in trust . . . solely for the purposes [therein] set forth." The fourth paragraph of this "agreement" appeared at the end of the page as follows: "The party of the first part hereby agrees with all due dispatch to purchase from the Estate of *P. W. Hatfield* the *300* shares of stock of Standard Can Company now held by said Estate. Immediately upon said purchase of said shares of stock, the parties hereto shall enter into an agreement among themselves as stockholders, and also a voting trust agreement *mutually agreeable.* ~~for a period of~~ ~~years. Said agreements shall provide among other things, that the agreements are to continue for a~~" There immediately followed the signatures of the parties at the bottom of the page. The italicized words were handwritten inserts and the deletion is as indicated.

The "agreement" executed on November 16, 1946 was the first two pages of a longer draft which had been prepared by counsel for the plaintiff. The pages of the draft which were not incorporated into the signed agreement admittedly represented proposed provisions of a stockholders' and voting trust agreement.

Following the execution of the above agreement the

defendant notified the Hatfield estate of his election to purchase the Hatfield shares for cash, there being an alternative instalment method of payment; and the stock was so purchased on December 30, 1946. The defendant borrowed $20,000 to meet his $40,000 payment for 100 shares. Thereafter the parties exchanged three drafts of a proposed voting trust and stockholders' agreement but none were executed because of inability to conclude mutually agreeable terms.

In this action the plaintiff proposes that an oral voting trust and stockholders' agreement was consummated prior to the execution of the November 16th writing. The root of the controversy is whether defendant is to remain in substance a minority shareholder or to achieve an unqualifiedly equal voice in the control and management of the Standard Can Company by virtue of the provisions of the alleged oral agreement.

We think the learned chancellor was fully justified in refusing to find that an integrated oral agreement was finally arrived at by the parties. The parol evidence rule, however, is rather obviously not the basis for precluding the alleged oral agreement. The writing on the contrary announces explicitly that it is *not* the entire agreement but it certainly strongly precludes an interpretation that there was a *then* contemporaneous oral agreement on the terms of a voting trust and stockholders' agreement. The learned chancellor aptly stated, "An agreement to agree is incapable of enforcement, especially when it is stipulated that the proposed compact shall be mutually agreeable."

The plaintiff's brief indicates the defect in its contention. It is admitted that formal agreements were to be drawn and that the defendant was to have the agreement prepared. At best the plaintiff proves that there was preliminary agreement on some terms, per-

haps most, but it is not denied that a final integration was to take place. The plaintiff's brief states ". . . an examination of the record will show that various agreements precedent to and contemporaneous with the signing of the writing were discussed between the parties . . .". Such discussions do not constitute a contract. Plaintiff's brief further states, "Appellant submits that while all the matters that should be and which it desired to be included in a formal written agreement were not reached between the Plaintiff and the Defendant that nevertheless the Plaintiff is entitled to protection with regard to those things that were agreed upon." The applicable law is otherwise. Aside from the intention of the parties to reduce their agreement to writing it is admitted that there was no full and definite agreement on terms. In *Nicholls v. Granger*, 7 App. Div. 113, 40 N. Y. S. 99 (1896) the court pertinently stated, "It is undoubtedly true that a stipulation to reduce a valid contract to some other form does not affect its validity, and that although it is in contemplation of the parties that a more formal contract shall be executed, . . . But it is essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms as well as the subject-matter of the contract; and if anything is left open for future consideration, the informal paper cannot form the basis of a binding contract."

We cannot enforce a portion of an agreement which failed to materialize; nor can we supply the terms of this contract. In *Wilson v. Pennsy Coal Co.*, 269 Pa. 127, 129-30, 112 A. 135 (1920), Mr. Justice STEWART quoted approvingly from *Maitland v. Wilcox*, 17 Pa. 231 (1851) as follows: " 'An arrangement of terms, in contemplation of a written contract, is not a perfect agreement upon which an action can be maintained. To produce this effect, it must be shown, by the acts or declaration of the parties, that they intended the

agreement to be operative before execution, and without regard to the writing.'" The plaintiff did not sustain such burden. Without extended quotation we may refer generally to *Schermer v. Wilmart,* 282 Pa. 55, 127 A. 315 (1925); *Taylor v. Stanley Co. of America,* 305 Pa. 546, 158 A. 157 (1932); *Mezza v. Beiletti,* 161 Pa. Superior Ct. 213, 53 A. 2d 835 (1947); 12 Am. Jur., Contracts, Sections 23, 24, 25; 6 R. C. L., Contracts, Sections 37, 38, 39; Restatement of Contracts, Sections 25, 26, 74; see the excellent annotation commencing at 122 A. L. R. 1217, supplemented in 165 A. L. R. 756, "Formal or written instrument as essential to completed contract where the making of such instrument is contemplated by parties to verbal or informal agreement."

We approve the learned chancellor's disposition of this case, and the exceptions to his adjudication were properly dismissed.

Decree affirmed at the cost of appellant.