## Arcuri, Appellant, *v.* Weiss.

Argued March 28, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William A. Goichman,* with him *Rosenzweig, Krimsky & Goichman,* for appellant.

*Samuel P. Lavine,* with him *Steinberg, Steinbrook, Lavine & Gorelick,* for appellee.

OPINION BY WATKINS, J., June 13, 1962:

This is an appeal from the judgment of the County Court of Philadelphia on a finding of the trial judge, sitting without a jury, in favor of Meyer Weiss, the defendant-appellee, and against Joseph Arcuri, the plaintiff-appellant, in an assumpsit action for the recovery of a deposit of $500; and from the order of the court below dismissing the plaintiff's exceptions seeking judgment non obstante veredicto.

The facts appear to be that Joseph Arcuri, upon learning that Meyer Weiss had a restaurant for sale, located at 1415 City Line Avenue, Philadelphia, made several visits to the location and met with Meyer Weiss to discuss the purchase of the business, one or more such meetings having taken place late in January or early February, 1958. Then on March 25, 1958 Arcuri, together with his accountant, Paul Grossman, met with Weiss at the restaurant and after some discussion and a brief inspection of the equipment, Grossman made out and gave to Weiss a check payable to him for $500 with the following notation printed on the left side of the check. "Tentative deposit on tentative purchase of 1415 City Line Ave., Phila. Restaurant, Fixtures, Equipment, Goodwill." On April 9, 1958 Arcuri, Grossman, Attorney Martin M. Krimsky and Allen Speiser,

accountant for Weiss, met at the restaurant for further discussion, at which time an inventory was taken which was typed by Speiser and sent to Krimsky on April 11, 1958 with the following paragraph being included in the letter, after the inventory was listed: "The Terms of Sale are, briefly, as follows: Total Sale Price $10,000.00, $2,000.00 Down, the remainder financed by monthly notes with interest at the rate of 6% for three years. There shall be a Grace Period of Fifteen days for the payment of said notes. Under the terms of the Bulk Sales Act, Myer Weiss will assume all liabilities and will transfer the property free and clear of any such debts. Liability List will be furnished to include all known debts as of date of settlement. In event the notes are repaid in full in two years or less from date of sale, the total consideration will be reduced by $850.00: if repaid in Thirty months the total consideration will be reduced by $400.00."

After this date several phone calls were made by Weiss to Arcuri to inquire as to what Arcuri intended to do regarding this transaction and in May, 1958 Attorney Krimsky telephoned Weiss and informed him that Arcuri was no longer interested in purchasing the restaurant and requested Weiss to return the $500. Weiss refused and this suit was instituted to recover the payment of $500 made to Weiss by Grossman on behalf of Arcuri.

On March 5, 1959 the plaintiff-appellant in this case had filed a motion for judgment on the pleadings on the ground that the check cited by the defendant was "not a sufficient written memorandum to take the alleged agreement out of the Statute of Frauds as contained in the Uniform Commercial Code in the section dealing with Sales." On April 29, 1959 Judge PIEKARSKI, of the County Court denied the motion on the ground that "the pleadings do not present a case clear and free from doubt." Judge PIEKARSKI did not make

any attempt to discuss the question of the Statute of Frauds. "Where questions essential to the nature of the arrangement between the parties become by the pleadings disputed matters of fact whose determination is dependent upon evidence before a trier of fact, no summary judgment should be entered." 18 Pa. D. & C. 2d 667, 670. This 'Court, on appeal, affirmed the court below, per curiam, 190 Pa. Superior Ct. 562, 155 A. 2d 475 (1959).

Appellant's first question: "Does the Statute of Frauds of the Uniform Commercial Code, 1953, April 6, P. L. 3, §2-201, 12A PS §2-201, render the defense to the claim insufficient as a matter of law?" is well taken. The pertinent portions of the section are:

"(1)   Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(3)   A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

"(a)   if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b) if the party against whom enforcement is sought admits in his pleading or otherwise in court that a contract for sale was made; or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606). (1953, April 6, P. L. 3, §2-201)."

The writing upon which the appellee relies to satisfy the requirement of the statute is the check with the marginal notation. We cannot escape the clear meaning of the key words in this notation, "Tentative deposit on tentative purchase". The word tentative is not an uncommon word in the English language and has been defined thusly: "Of the nature of an attempt, experiment, or hypothesis to which one is not finally committed." Antonyms being: definite, final, conclusive. In fact, when Weiss read the notation the warning flag immediately went up, and when he inquired as to their purpose he was told that was just until the formal papers were made up. This writing does not satisfy the requirement of the statute.

Since this is the first appellate decision touching upon this question we feel some comment is needed. The purpose of the Uniform Commercial Code which was written in terms of current commercial practices, was to meet the contemporary needs of a fast moving commercial society. It changed and simplified much of the law which it has supplanted but it also sets forth many safeguards against sharp commercial practices. This section we feel is one such safeguard. While it does not require a writing which embodies all the essential terms of a contract, and even goes so far as to permit omission of the price, it does require some writing which indicates THAT A CONTRACT FOR SALE HAS BEEN MADE. (Emphasis writer's).

Appellant's argument that appellee failed to prove the making of a binding oral agreement is also well

taken. A thorough review of this record indicates there was never a meeting of the minds of the parties requisite to the making of a binding, oral agreement. The check supplied the subject matter, the note on the inventory list sent by Speiser sets forth other terms and Weiss testified to others, i.e., the down payment, etc., which did not agree with any other evidence; and Arcuri stated nothing was definitely agreed upon.

It is an essential to the enforcement of an informal contract that the minds of the parties should meet upon all the terms, as well as the subject matter, of the contract; and if anything is left open for future consideration, the informal paper cannot form the basis of a binding contract. We cannot enforce a portion of an agreement which failed to materialize, nor can we supply the terms of this contract. *Onyx Oils & Resins, Inc. v. Moss,* 367 Pa. 416, 80 A. 2d 815 (1951).

Judgment reversed and judgment n.o.v. entered for appellant.