**MELO–SONICS CORPORATION and Southwest Oil Corporation, Plaintiffs,**

v.

**David CROPP, Chalmers C. Jordan, Robert W. Lingo and Glass-Tite Industries, Inc., Defendants.**

**Civ. A. No. 1052.**

United States District Court
W. D. Pennsylvania.
March 31, 1964.

Donald W. Grieshober, of Blackmore & Grieshober, Erie, Pa., for plaintiff.

William F. Illig and John Potter, of Gifford, Graham, MacDonald & Illig, Erie, Pa., for individual defendants.

Walter McGough, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Patrick E. Dressler of Cummings & Lockwood, Stamford, Conn., for defendant Glass-Tite Industries.

WILLSON, District Judge.

The complaint in this case filed February 12, 1964, alleges a cause of action under the diversity statute for breach of a written contract. It is alleged that on February 13, 1963, the defendants, Cropp, Jordan, and Lingo, offered by telegram to sell to plaintiffs all of their shares of capital stock in three corporations for a total price of $1,500,000.00. The offer is set out in a copy of the telegram marked Exhibit "A" and attached to the complaint. Plaintiffs say that by an answering telegram on the same date they accepted the offer of the defendants.

A copy of the answering telegram is marked Exhibit "B", and is attached to the complaint. It is alleged thereafter that the parties met from time to time for the purpose of formalizing the agreement, and that plaintiffs were at all times ready, willing, and able to formalize the agreement and to consummate the purchase of defendants' stock in accordance with the exchange of telegrams, but that the defendants refused to perform the agreement.

Counsel have been heard at the argument on the motion of the three individual defendants to dismiss. Defendant, Glass-Tite Industries, Inc., being only secondarily liable filed no motion. Defendants contend and counsel for the plaintiffs agreed at the argument that the contract, if any, is to be found in the exchange of telegrams. Defendants' telegram reads:

"SVC MEADVILLE PENN
1960 FEB 13 PM 4 34
YR P HMAO19 327 PME RD AND REPEAT BACK ARTHUR J. KANIA ATTY AT LAW 7131 RIDGE AVE BGD VINCENT J. PEPICELLI ATTY FOR 3 SELLING STOCKHOLDERS QUOTE THE OFFER OF SOUTHWEST OIL CORPORATION TO PURCHASE CAPITAL STOCK OF MY THREE CLIENTS IN SAEGERTOWN COMPONENTS, INC. L.C.B. TOOL CO. INC. AND ALLEGHENY ELECTRONICS, INC. IS NOT ACCEPTABLE AS IT READS. HOWEVER, MY THREE CLIENTS ARE WILLING TO SELL THEIR CAPITAL STOCK IN SAID CORPORATIONS FOR THE TOTAL PRICE OF ONE MILLION FIVE HUNDRED THOUSAND ($1,500,-000.00) DOLLARS SUBJECT TO FORMALIZING A PRELIMINARY AGREEMENT ALONG LINES PREVIOUSLY DISCUSSED. WILL BE IN YOUR OFFICE AT 10:00 AM ON FEBRU-

ARY 15, 1960 WITH MY CLIENTS FOR PURPOSE OF FORMALIZING SUCH AN AGREEMENT. UNQUOTE
GV PHILA 13
PS"

The answering telegram from plaintiff, Southwest Oil Corporation, reads:

"DAVID CROPP, CHALMEY JORDAN, ROBERT LINGO
c/o DAVID CROPP
R.D. #3
MEADVILLE, PENNA
TELEGRAPHIC OFFER BY YOUR ATTORNEY VINCENT J. PEPICELLI CONCERNING SALE OF CAPITAL STOCK OF SAEGERTOWN COMPONENTS, INC., L.C.B. TOOL CO., INC., AND ALLEGHENY ELECTRONICS, INC. AS STATED IN SAID TELEGRAM AND ALONG LINES PREVIOUSLY DISCUSSED ACCEPTED BY SOUTHWEST OIL CORPORATION. THIS ALSO CONFIRMS MEETING DATE AND TIME TO FORMALIZE AGREEMENT.
SOUTHWEST OIL CORPORATION
BY ARTHUR J. KANIA"

Defendants' contention is expressed in the motion of the individual defendants to dismiss wherein it stated:

"1. Plaintiff's Exhibit 'A' (expressly rejecting a previous offer and making reference to previous discussions (not agreements) shows on its face that it was not intended as an expression of defendants' fixed purpose to sell until defendants had given a further expression of assent in the nature of a formalized written agreement. (Restatement — Contracts — Section 25.)"

"2. Plaintiffs' Exhibits 'A' and 'B' show on their face that they are nothing more than preliminary expressions and that the senders thereof recognize the necessity of a formal written contract to be subsequently negotiated (along lines previously discussed) which would set forth any and all legal obligations between the proposed parties thereto; therefore, plaintiffs' Exhibits 'A' and 'B' do not constitute a complete contract upon which an action can be based. (Restatement—Contracts—Section 26; Onyx Oils & Resins, Inc. v. Moss, 367 Pa., 416 [80 A.2d 815])."

On the other hand, says plaintiff, Exhibit A is a counteroffer which plaintiff accepted in the answering telegram, and Exhibit B, says plaintiff, confirmed the agreement of the parties "along lines previously discussed" leaving only a formal document to be executed for the purpose of reducing to writing the prior agreement of the parties.

Plaintiffs contend that the telegrams show on their face that the parties had reached agreement on all matters pertaining to a sale by the individual defendants of their stock interest in the three corporations.

I think it is important to note at the outset that neither in the complaint nor in the telegrams can one discern what the "along - lines - previously - discussed" were. In fact, at the argument, plaintiffs' counsel was unable to state what the previous discussions were, or what the agreement was that the parties had reached by any previous discussions and negotiations. In the authorities cited by plaintiffs' counsel, especially Pennsylvania Uniform Commercial Code, § 2–204, 12A P.S. § 2–204, and the Restatement of Contracts, § 26, it is assumed that a meeting of the minds of the contracting parties has been reached, and the assent arrived at is then shown by proof either by oral testimony or by writings, and in such a situation the mere failure to reduce the agreement into a formal writing will not prevent the enforcement of the contract.

But in the instant telegrams it does not seem to this Court that the parties have agreed to an enforceable contract. It is apparent that prior to Exhibit A a previous offer had been made by plaintiffs which in flat terms was rejected by Exhibit A, which states the offer of Southwest "is not acceptable as it reads." The million and a half dollar figure was stated as the selling price, but subject to formalizing a "preliminary agreement along lines previously discussed." The last line in the offering telegram states the purpose of the meeting as "for purpose of formalizing such an agreement." Thus, the last two sentences in the offering telegram seem to indicate that a preliminary agreement was to be entered into. The offer contains the phrase "formalizing a preliminary agreement" and then "formalizing such an agreement." It is significant and important also to note at this point that the phrase, "along lines previously discussed," is not language indicating that there was a previous agreement. The offer then suggests a meeting date. It is significant too that in Exhibit B, the acceptance telegram, plaintiffs use the same language, "along lines previously discussed." These words and phrases negative final agreement. They indicate the contrary.

■■■■ This Court recognizes the rule that all the facts contained in the complaint and every inference fairly deductible therefrom, as well as all facts of which the Court can take judicial notice, including the allegations therein, must be treated and admitted as true for the purpose of ruling on the instant motion. This proposition needs no citation of authority, and the complaint in this case has been examined with that rule of law in mind. But from the face of the two telegrams, as this Court sees it, only the price was agreed to. The transaction involved a million and a half dollars and the stock of three separate corporations. It is impossible to infer from the exhibits all the ramifications or any terms of any understanding reached by the parties except the sale price. It seems

to the Court that as Judge McLaughlin said in In re ABC-Federal Oil & Burner Co., 290 F.2d 886, (3d Cir. 1961), the parties in the litigation did not intend to be bound until a formal document was executed, and such being the case, they are not bound by an exchange of telegrams. The contract is one coming within the principles discussed by Judge McLaughlin on page 889 where he refers to the early case of Mississippi & Dominion Steamship Co. v. Swift, 86 Me. 248, 29 A. 1063 (1894). The language in 290 F.2d 886, at 889 is:

"In determining which view is entertained in any particular case, several circumstances may be helpful, as whether the contract is of that class which are usually found to be in writing, whether it is of such nature as to need a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested, or referred to during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

See also Onyx Oils & Resins, Inc. v. Moss, 367 Pa. 416, 80 A.2d 815 (1951), and Upsal Street Realty Co. v. Rubin, 326 Pa. 327, 192 A. 481 (1937).

In considering this case, it seems that an important circumstance is that the telegrams were exchanged by two lawyers. The offer is addressed to Arthur J. Kania from Vincent J. Pepicelli, who says he is the attorney for three selling stockholders. It is true, of course, that Exhibit "B" is signed by Southwest Oil Corporation by their attorney, Arthur J. Kania. Giving due weight in this case to the principles announced in the In re ABC-Federal Oil & Burner Co. case, it seems unlikely that the lawyers intended their telegrams as being anything more than the opening of negotiations. It is

more likely that no final agreement was intended until a legal document could be prepared and executed. Such is the way of lawyers. They generally prepare papers for submission to and agreement of their clients on all details. It seems to this Court that the exchange of telegrams strongly suggests that formal writings were a necessary prerequisite to the completion of the transaction. The references in the telegrams are to discussions of possible terms, but not an expression of a meeting of the minds of the parties.

In this case it may not be repetitious to again emphasize that the exchange of telegrams is the only allegation of an enforceable contract averred in the complaint. In the telegrams this Court is unable to find the "mutual manifestations of assent that are in themselves sufficient to make a contract" as is discussed in § 26 of the Restatement of Contracts. It is believed that *Comment a* under § 26 describes the instant situation rather than the one discussed under *Comment b*. In *Comment b,* "the expected document is to be a mere "memorial' of operative facts already existing." But the point is in the instant case there are no operative facts described in the telegrams or averred in the complaint.

The Court has not overlooked the case of Pennsylvania Company v. Wilmington Trust Company, a 1960 Delaware case, 166 A.2d 726, cited by plaintiffs' counsel, but it is believed that the decision is not helpful in the instant case, as it contained several letters and even drafts of agreements which incorporated previous understandings reached. In that decision the parties had agreed upon the basic terms of the contract, and only details remained to be agreed upon. The point is that the general fundamental principles applicable to this case and to the other cases are well known, but each alleged contract must be examined with those principles in mind. This has been done in this case, and this Court has concluded that the motion has merit and must be granted.