**MDL CAPITAL MANAGEMENT, INC.;
Mark D. Lay; Steven L. Sanders;
Edward Adatepe, Appellants**

v.

**FEDERAL INSURANCE COMPANY,
Appellee.**

No. 06–4815.

United States Court of Appeals,
Third Circuit.

Argued Nov. 1, 2007.

Filed April 2, 2008.

Joseph H. Luciana, III, Esquire, (Argued), Edward W. Diggs, Esquire, Clarence E. Dozier, Jr., Esquire, James S. Malloy, Esquire, Kirkpatrick & Lockhart, Preston Gates Ellis, LLP, Pittsburgh, PA, for Appellants.

Daniel J. Standish, Esquire, (Argued), Mary E. Borja, Esquire, Kimberly M. Melvin, Esquire, Wiley Rein LLP, Washington, D.C., Dennis St. J. Mulvihill, Esquire, Robb Leonard Mulvihill, Pittsburgh, PA, for Appellee.

Before: RENDELL, WEIS, and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Plaintiffs MDL Capital Management, Inc., Mark D. Lay, Steven L. Sanders, and Edward Adatepe appeal the District Court's judgment denying coverage for liability claims under two separate policy binders. This is a non-precedential opinion and as such is directed to the litigants. Because the parties' briefs set out the facts and legal issues at length, we do not review them in detail here.

Plaintiffs contend they are entitled to coverage under the Investment Advisor Errors & Omission Liability ("E&O") and Executive Liability & Indemnification ("D&O") binders issued by defendant Federal Insurance Company. The claims against Federal Insurance arise from the Ohio Bureau of Workers' Compensation's suit against plaintiffs and a U.S. Securities and Exchange Commission investigation. The District Court granted summary judgment in favor of Federal Insurance, correctly determining that plaintiffs were not entitled to D&O coverage, but erroneously gave effect to an exclusion contained in the E&O policy. We will affirm the judgment in part, reverse in part, and remand for further proceedings.

We exercise plenary review over a grant of summary judgment and apply the same standard that the district courts apply. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir.2000). A judgment will be upheld if there are no issues of material fact and a party is entitled to judgment as a matter of law. *Id.* For purposes of this appeal we assume, as did the District Court, that the Federal Insurance binders were valid.

Pennsylvania law, applicable to this case, instructs that an insurance binder is a "written instrument, used when a policy cannot be immediately issued, to evidence

that the insurance coverage attaches at a specified time, and continues ... until the policy is issued or the risk is declined and notice thereof given." *Harris v. Sachse,* 160 Pa.Super. 607, 52 A.2d 375, 378 (1947) (quoting Webster's Int. Dict. 2nd Ed.). Ordinarily a binder "is to be regarded as made upon the terms and subject to the conditions contained in the ordinary form of policies used by the [issuing] company." *Rossi v. Firemen's Ins. Co.,* 310 Pa. 242, 165 A. 16, 19 (1932); *see also* 1A Lee R. Russ & Thomas F. Segalia, Couch on Insurance 3d § 13:2 (1995) ("essential elements of the contract ... may be supplied from the standard form policy"). The provisions of Federal Insurance's standard policy and endorsements govern where applicable because in the binder Federal Insurance specifically directed plaintiffs to refer to the form policy and endorsements "for a description of coverage."

## I.  The E&O Binder

■  The District Court's analysis of the E&O binder focused on an endorsement titled "Broad Private Fund Exclusion–MDL Broad Market Fixed Income Fund, MDL Core Fund or MDL Active Duration Fund, Ltd. (endorsement wording to be developed)." The Court held, as a matter of law, that this endorsement denied coverage for the plaintiffs' claims under the E&O binder. We do not agree.

The heading for the section of the E&O binder containing endorsements includes a parenthetical providing, "The titles and headings are for convenience only. Please refer to the policy and endorsements for a description of coverage." The Broad Private Fund Exclusion did not refer to a form containing prototypical language. Instead, immediately following the Exclusion's title appears the language, "endorsement wording to be developed."

The District Court reasoned that when considered within the grant of coverage afforded in the prototype E&O policy's insuring clause, the exclusion "could only have one meaning: that the Investment Adviser [E&O] Policy would not extend to claims based upon MDL's provision of professional services related to the three listed funds.... [T]he title of the endorsement itself explains that the MDL Broad Market Fixed Income Fund, the MDL Core Fund and the MDL Active Duration Fund, Ltd. would be excluded from coverage under the Investment Adviser Policy."

Pennsylvania law requires courts to read an insurance policy in its entirety and ascertain the scope of its coverage by considering the entire instrument. *See Riccio v. Am. Republic Ins. Co.,* 550 Pa. 254, 705 A.2d 422, 426 (1997).

In performing its analysis in this case, the District Court overlooked the caution in the binder providing that the titles of the endorsements "are for convenience only." The binder made it clear that the titles were not intended to be used in interpreting the effect of the endorsements. The language "Broad Private Fund Exclusion" does not define the exclusion. Although the parties agreed that an endorsement titled "Broad Private Fund Exclusion ..." would be included in the contemplated E&O policy, they never agreed on what it would provide. Thus, we are left with an exclusion that is devoid of substance.

The reference to the Broad Private Fund Exclusion endorsement in the E&O binder was essentially an "agreement to agree," and, under Pennsylvania law is a nullity. *See Onyx Oils & Resins, Inc. v. Moss,* 367 Pa. 416, 80 A.2d 815, 816 (1951) (holding "[a]n agreement to agree is incapable of enforcement"). This Court cannot rewrite the parties' agreement in order to give effect to the parties' conflicting views

of what the Exclusion was intended to accomplish. *See Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934) ("It is not the province of the court to ... make a new contract for the parties; its duty is confined to the interpretation of the one they have made for themselves.").

The District Court erred in granting summary judgment in Federal Insurance's favor based on an unarticulated text of the purported Private Fund Exclusion. To that extent and without prejudice to other contentions of the parties with respect to the E&O binder, including allegations of misstatements in the application for insurance, the judgment in favor of Federal Insurance will be reversed and the case remanded for further proceedings.

## II. The D&O Binder

We will affirm the District Court's conclusion that plaintiffs Lay, Sanders, and Adatepe are not entitled to coverage for the Ohio Bureau lawsuit or the SEC investigation under the Executive Liability and Indemnification ("D&O") binder.

The D&O binder referred to Federal Insurance form # 17–02–1149 for a description of its coverage. The insuring clause of that form provides,

> "[Federal Insurance] shall pay on behalf of each of the **Insured Persons** all **Loss** for which the **Insured Person** ... becomes legally obligated to pay on account of any **Claim** first made against such **Insured Person,** individually or otherwise, during the **Policy Period** ... for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**."

(emphasis in original).

An **"Insured Person"** is "any past, present or future duly elected director or duly elected or appointed officer of the **Organization,"** in this case MDL Capital. (emphasis in original). Lay, Sanders, and Adatepe all qualify as "Insured Persons" because they all were past directors and/or officers of MDL Capital.

A **"Wrongful Act"** is "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an **Insured Person,** individually or otherwise, in his **Insured Capacity,** or any matter claimed against him solely by reason of his serving in such **Insured Capacity."** (emphasis in original). **"Insured Capacity"** means "the **Insured Person**'s position or capacity but shall not include any position or capacity in any entity other than [MDL Capital], even if [MDL Capital] directed or requested the **Insured Person** to serve in such other position or capacity." (emphasis in original). For purposes of this appeal, we will assume that the allegations against Lay, Sanders, and Adatepe in the Ohio Bureau complaint and SEC Order are concerned with their "Insured Capacity" and therefore assert "Wrongful Acts."

The binder states that the "Professional Services Exclusion–Complete," Federal Insurance form # 17–02–1224, applies to the D&O coverage. This prototypical endorsement provides,

> "It is agreed that [Federal Insurance] shall not be liable for **Loss** on account of any **Claim** based upon, arising from or in consequence of the rendering of or failure to render professional services, including but not limited to the following services:
>
> i. broker;
>
> ii. dealer;
>
> iii. financial adviser;
>
> iv. investment adviser;
>
> v. investment banker;
>
> vi. investment manager;

. . . ."
(emphasis in original).

Since Lay, Sanders, and Adatepe are "Insured Persons" that had two "Claims" filed against them during the "Policy Period" for, we assume, a "Wrongful Act," the D&O binder will cover the claims arising from the Ohio Bureau litigation and SEC investigation [1] unless barred by the professional services exclusion.

The endorsement bars coverage under the D&O binder if the litigation "arises from ... the rendering of or failure to render professional services." Pennsylvania law defines a similar phrase "arising out of" as " '[b]ut for' causation ... a cause and result relationship." *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir.1989) (quoting *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 228 A.2d 901, 903 (1967)). Applying this definition, the "Professional Services Exclusion–Complete" excludes D&O coverage for Lay, Sanders, and Adatepe for claims that would not have occurred but for the providing of, or failing to provide, investment adviser and investment manager services.

## A. The Ohio Bureau Lawsuit

■ We have carefully reviewed the Ohio Bureau's complaint. The 37–page document, containing 17 counts over 222 paragraphs,[2] focuses on MDL Capital's alleged derelictions as investment adviser and investment manager to the Bureau. The allegations assert two roles of MDL

Capital: (i) as fixed-income investment manager to the Ohio Bureau in connection with the creation of the "long-bond account" and the Active Duration Fund; and, (ii) as investment adviser and manager of the Active Duration Fund.

Both roles involve the provision of "professional services" as that term is defined in the "Professional Services Exclusion–Complete." The Ohio Bureau litigation, therefore, arises from the alleged provision of, or failure to provide, "professional services," and the endorsement operates to withhold D&O coverage.

Plaintiffs attempt to avoid this conclusion by quoting a portion of the complaint that alleges, "inaction, lack of diligence and oversight, and failure to intervene by the Individual Director Defendants ... caused the overleveraging of the [Active Duration] Fund's assets." They assert that this language implicates them as directors of MDL Capital in a role that does not involve "professional services" and hence would be covered under the D&O binder.

The complaint does assert that Lay, Sanders, and Adatepe were directors of both MDL Capital and the Active Duration Fund. Assuming the complaint states that they failed in their capacity as directors of MDL Capital to oversee its activities with respect to the Active Duration Fund, the allegation stems from MDL Capital's purported failure as investment adviser and investment manager. Consequently, the claim arises from the providing of, or fail-

---

1. In the District Court, the parties disputed whether the D&O and E&O binders would cover the SEC investigation. Federal Insurance asserted that both binders expired on their own terms before the SEC investigation began on July 15, 2005. The District Court did not address this issue. Our analysis of the D&O binder's inapplicability to the SEC investigation does not prevent Federal from renewing its argument as to the E&O binder on remand.

2. The counts include allegations of common law fraud, fraudulent inducement, Ohio Securities Act violations, negligent misrepresentation, negligent nondisclosure, breach of fiduciary duty, constructive fraud, breach of contract, common law conspiracy, common law unjust enrichment, and aiding and abetting.

ure to provide, professional services and D&O coverage is not available pursuant to the "Professional Services Exclusion–Complete."

## B. The SEC Investigation

■ Federal Insurance's D&O binder does not cover the SEC investigation because the investigation also arises from the providing of or failure to provide "professional services." The SEC Order Directing Private Investigation and Designating Officers to Take Testimony alleges that individuals and entities associated with MDL Capital may have violated federal securities law. The order asserts: (i) MDL Capital and individuals and entities associated with MDL Capital may have defrauded or deceived individuals in connection with the offer, purchase and sale of securities; (ii) MDL Capital and individuals and entities associated with MDL Capital may have engaged in fraudulent transactions, practices or courses of business; (iii) MDL Capital may have made unauthorized transactions in the course of its business and attempted to conceal losses from these transactions; and, (iv) MDL Capital, as an investment adviser, may have failed to keep accurate records and books relating to its business.

These allegations are based upon MDL Capital's providing of, or failure to provide, investment adviser or investment manager services. Therefore, the "Professional Services Exclusion–Complete" excludes D&O coverage for the SEC investigation.[3]

## C. The Outside Directorship Endorsement

■ Lay, Sanders, and Adatepe also advance an alternative contention that they are entitled to D&O coverage as directors of the Active Duration Fund because of the binder's "Outside Directorship Endorsement–As required by the Insured Organization." This endorsement refers to form # 17–02–6537, a prototype endorsement that provides,

"It is agreed that:

1.  The term **Insured Capacity** . . . is amended to read in its entirety as follows:

    **Insured Capacity** means the **Insured Person's** position or capacity in the **Organization** or in any **Outside Directorship**

2.  [The] Definitions of this Policy is amended to include the following terms:

    (a) **Outside Directorship** means the position of director, officer, trustee, governor, or equivalent executive position with an **Outside Entity** if service by an **Insured Person** in such position was at the specific request of the **Organization** or was part of the duties regularly assigned to the **Insured Person** by the **Organization.**

    (b) **Outside Entity** means any of the following organizations:

    [The term insured person will also include] [Outside Entity]

3.  Coverage provided to any insured person in an **Outside Directorship** shall:

    . . .

    b.  only extend to those **Outside Entities** and corresponding **Insured Persons** listed in paragraph 2 above;

    . . . ."

(emphasis in original).

Section b of paragraph 3 of the endorsement clearly provides that outside di-

---

**3.** Federal contends that plaintiffs have waived the SEC issue by failing to brief it on appeal. In view of our holding on the merits, we need not address that contention.

rectorship coverage would only extend to the entities listed in paragraph 2. Section (b) of paragraph 2 contemplates negotiation over the organizations that would qualify as "Outside Entities." Federal Insurance and MDL Capital never reached an agreement on this provision.

We conclude that, like the Broad Private Fund Exclusion in the E&O binder, the "Outside Directorship Liability Endorsement" was merely an agreement to agree and is not entitled to any legal significance. Accordingly, Lay, Sanders, and Adatepe are not entitled to D&O coverage for their roles as directors of the Active Duration Fund.

### III. The Application Warranty Exclusion

Finally, Federal Insurance argues that MDL Capital made material misrepresentations in its application for insurance, which precludes coverage under both binders. The District Court did not address this contention. We specifically decline to consider the material misrepresentations issue on this appeal and leave it for further consideration by the District Court on remand. *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 933 n. 21 (3d Cir.1997) (quoting *Selected Risks Ins. Co. v. Bruno,* 718 F.2d 67, 69 (3d Cir.1983), for the proposition, "[i]t is the general rule that a federal appellate court does not consider an issue not passed upon below.").

This appeal is from rulings applicable to two separate binders. We conclude on the present record that the District Court erred in interpreting the Broad Private Fund Exclusion endorsement. We will reverse the entry of summary judgment on the E&O claim and remand for further proceedings.

We will affirm the District Court judgment in favor of defendant in the D&O coverage claim.

Accordingly, the judgment of the District Court is affirmed in part and reversed in part.