200 So.2d 473

**JIM WALTER CORPORATION**

v.

**Fred KNODEL.**

I Div. 395.

Supreme Court of Alabama.

May 5, 1967.

Rehearing Denied June 29, 1967.

R. A. Norred, Birmingham, and E. Graham Gibbons, Mobile, for appellant.

Harry Seale, Mobile, for appellee.

PER CURIAM.

This suit, filed in the circuit court of Mobile County, is based on the statutory common count for work and labor performed by plaintiff for defendant from to-wit: September 1, 1963 through August 3, 1964, at the request of defendant. Title 7, § 223 (11), Code of 1940. The litigated issue was whether or not plaintiff was entitled to "bonus" pay for services rendered during the aforementioned period. Judgment on verdict of jury was for $2,500. Defendant appeals.

The defendant, after adverse ruling on its demurrer to the complaint, filed a plea of the general issue, and then filed three special pleas, including a plea of the statute of frauds. The trial court sustained plaintiff's demurrers to all three special pleas.

There are three contentions of error embraced in one assignment of error. The assignment of error is as follows:

"1. For that the Trial Court erred in its order * * * sustaining demurrers * * * to the Defendant's special pleas."

Appellant argues only one, namely, the ruling on the demurrer to the plea interposing the statute of frauds.

■■ We have held in numerous decisions that assignments of error not argued in brief will be treated as waived. Vol. 2A Alabama Digest, Appeal & Error, ☞ 1078(3), p. 580; Haigler v. Merritt, 206 Ala. 199, 89 So. 242(3); Pettus v. Louisville & N. R. Co., 214 Ala. 187, 106 So. 807(25). Therefore, the trial court's rulings on two of the special pleas remain unchallenged.

· ■ It is stated in Lonnie Russell Ford, Inc. v. Mitchell, 279 Ala. 340, 185 So.2d 132(1), as follows:

"* * * We have frequently said that where a single assignment of error complains of two or more rulings on demurrers to distinct units of pleading, such as counts, pleas or replications, a single assignment of error is considered and treated as joining each of the several rulings, and, if any one of such rulings is correct, the trial court will be justified and the appellant will fail, for he will not have sustained his single averment of error in every one of the rulings he has joined in a single assignment of error. * * *"

Appellant by Assignment of Error No. 2 complains that the trial court erred in refusing defendant's request for the affirmative charge with hypothesis. Contention is that to authorize recovery on a quantum merit count, as here, it was incumbent on plaintiff, not only to show services rendered at defendant's instance, but the reasonable value of such services. Citing Terry Realty Company v. Martin, 220 Ala. 282, 124 So. 901(1). Also, it contends that to recover on the common counts for services rendered under a special contract fixing the price of the services, plaintiff must show that he has fully performed the contract, leaving nothing to be done except payment of the price by defendant. Terry Realty Company v. Martin, supra.

A brief review of the employment relationship between plaintiff and defendant would be helpful in considering the efficacy of this assignment.

The plaintiff was engaged, for a number of months prior to this managerial employment relationship, in selling prefabricated dwelling houses on credit for defendant. Such houses to be located on the purchaser's lot that he owns in fee simple and free of encumbrance. To secure the balance of the purchase price, appellant would take a mortgage with time payments, or the equivalent, on both the lot and the dwelling house.

Plaintiff, for a number of months, was employed by the defendant in different capacities, but in April of 1963 he was promoted to an executive or supervisory position of branch manager of the Mobile area. This area embraced territory in southwest Alabama and part of Mississippi. He retained this position until August 3, 1964, at which time he was altogether relieved of his employment relationship with defendant.

Plaintiff's contention is that while so employed as branch manager, with main office in the City of Mobile, he was required expeditiously to perform duties as follows:

1. Obtain a credit report, which had to be obtained in 72 hours, as the beginning of the construction had to be done within that time.

2. Had to give an opinion as to what the property was worth.

3. Had to oversee and take inventory and deliver materials from a warehouse which had in it shingles, roofing material, windows, nails, doors, and other building material, except the actual lumber itself.

4. Oversee Assistant Managers at the sub-offices.

5. Supervise construction as much as possible.

6. Make a Courthouse check as to title.

7. Dictate letters and look after correspondence and the signing of contracts and mortgages and their preparation.

8. Exhibit model houses.

9. Try to make collections where defaults were made.

10. Check on complaints and make repairs, look after the truck drivers and delivery of materials to the job sites.

11. Visit the sub-offices and check on their operations.

In making the Courthouse check, the plaintiff would have to:

(a) Check mortgage books.

(b) Check the deed books.

(c) Check the lien books.

(d) Check the claim books.

(e) Check for easements.

(f) Check judgment records for liens.

(g) Check the Courthouse records to find out if the liens were perfected.

(h) Where an estate was involved check the names and addresses of the heirs and their ages.

(i) Check the tax records.

(j) Check the marriage records.

(k) Check the minutes of the Probate Court as to guardians and administrators and their appointments and whether estates had been closed.

We have carefully read all the evidence in the record and it is our view that the above duties were in most instances required of plaintiff. So far as the title work was concerned, defendant contended that plaintiff was privileged to engage the services of title experts if necessary.

We delineate the above duties to illustrate the responsibility the plaintiff was under in his efforts to fill the position as manager and what the defendant expected of him.

The record also indicates that during defendant's fiscal year from September 1, 1963 to August 31, 1964, plaintiff's Mobile office, during the time of his employment, namely, from September 1, 1963 until August 3, 1964, sold 260 dwelling houses, which were erected on various lots. Of this number, 64 were repossessed and 144 became delinquent.

Adverting further to the evidence, appellee testified that when he was hired in April, 1961, as Assistant Manager for the Mobile District, Mr. Ned Smith, Regional Supervisor, who employed him, "told me at that time that the job as branch manager

was always open to assistant managers and sub-branch managers. At the time that we took over the office as branch manager, which was the next step up, that if I performed and got the nominal amount of business that I would receive not less than $2500.00 (bonus); that if I got the business it would be that much or more. He said that none of their managers received less than $2500.00 (bonus)."

Witness also testified that the company, when he became district manager, had in effect a Million Dollar Club and that he became a member of this club; that at the end of the fiscal year he received the company's check for $800.00, after deducting income taxes of $200.00; that to become a member of that club he had to sell a million dollars in gross sales of houses. This did not include interest.

Also, witness testified that Mr. Tom Hires, Vice-President at Pensacola, in charge of operations, told him, soon after the 1964 fiscal year commenced, that he had done a good job, and if he did as good a job next year "you should receive $10,000 salary plus bonuses,—salary and bonus next year. That is the way he put it to me." This conversation took place in Birmingham. Mr. Ned Smith was present.

The record is definite that plaintiff was paid a regular salary of $100 weekly plus a drawing account of $25 per week. Without detailing, we think the record supports as a fact that plaintiff, during the fiscal year of 1964, prior to his discharge, sold homes that amounted to considerably more than one million dollars.

While defendant did not agree to pay any specific sum to plaintiff as a bonus for selling homes, a minimum sum of $2500 was discussed as an incentive to produce sales. No specific amount of gross sales was agreed upon, but eligibility for membership in the Million Dollar Club was satisfactory production. The plaintiff exceeded this amount for the fiscal year he was dis-

charged. The jury returned a verdict for the minimum of $2500.

It is quite apparent from the record that defendant became dissatisfied with plaintiff because of foreclosures on homes he had sold or were sold in his area, and also with the number of delinquents among the purchasers. The result was the termination of his employment and refusal to pay him a bonus for the time he served during said fiscal year.

It occurs to us that plaintiff, as we view the evidence, was pretty well loaded with duties and was not immune under the circumstances from errors of judgment in several facets of his duties. The defendant was informed of this load and knew or should have known that many errors of judgment on the part of plaintiff would, in all probability, follow. The defendant's efforts to penalize him by denying him a bonus has no legal basis. The bonus, as we see the evidence and issues, was predicated on achieving gross sales of dwelling houses of one million dollars or more.

■ We are impressed from the record that the jury could reasonably determine from the evidence, which they evidently believed, that defendant promised to pay plaintiff a bonus of not less than $2500.00 for the year 1963–64, if he did as well that year as he did that part of the fiscal year 1963 in which he served as manager. The jury could very well find from the evidence that plaintiff's gross sales for the year 1963–64 exceeded One Million Dollars.

We are not impressed with defendant's argument that any bonus under discussion between plaintiff and defendant's officers, Mr. Ned Smith and Mr. Hires, related to a gratuity for services rendered. Defendant was wanting sales and business, large volumes, and was offering a bonus to its managers as an inducement for perseverance and hard work to get the sales. Such sales were expected to benefit materially defendant's financial position. As an in-

ducement to extra efforts on the part of defendant's managers the bonus was offered. It was not a gratuity in our judgment, but a contract based on performance. Plaintiff produced the volume of sales and now seeks his pay.

The minimum bonus for such achievement, so appellee contends, was $2500.00. This amount was fixed by the jury as the amount of bonus to which plaintiff was entitled.

■ We recognize the rule that under the common count here involved, plaintiff had the burden of proving the value of his services. Terry Realty Company v. Martin et al., 220 Ala. 282, 124 So. 901(1), supra. On cross examination, plaintiff testified:

"Q. And you are aware, are you not, that this suit is for the sum of $5,000.00?

"A. Yes sir.

"Q. How much money does the Jim Walter Corporation actually owe you?

"A. I feel like they owe me that much."

An inference could be drawn therefrom that this was the value of his services unpaid.

But the jury could very well find from the evidence that defendant fixed $2500.00 as its own minimum measure for membership in the Million Dollar Club. There was no need for further proof as to the minimum value of such services. The jury relied on defendant's own minimum measure and returned a verdict in accordance therewith. We are not here concerned with a verdict for which no proof as to value of services was offered. "Sufficient unto the day is the evil thereof."

There was no error on the part of the trial court in refusing defendant's written charges that carried affirmative instructions for defendant.

■ The written instructions made the subject of Assignments of Error 6 and 7

were both abstract and properly refused. We have held that such charges, as here, which merely state an abstract proposition of law without instructing the jury their effect upon the issues of the case on trial may be refused without error. Moore v. Cooke, 264 Ala. 97, 84 So.2d 748(8).

Defendant objected to the question on direct examination propounded to plaintiff as follows:

"Q. Now, who did the hiring in April of 1961?

"A. Ned Smith.

"Q. And what were you employed as at that time?

"A. As assistant manager of the Mobile office.

"Q. Yes sir, and was anything mentioned about a bonus at that time?

"A. Yes sir."

The objection was overruled.

Defendant contends that the evidence was without probative value as to the issues before the court, and the ruling was substantial and reversible error, for under the existing statutory enactment "heretofore cited in this brief negates the enforceability of any contract not in writing not to be performed within one year."

■ The plea of the statute of frauds was ruled out on demurrer. The ruling, as we have already noted, is not here reviewable. The statute is not available as a defense under a plea of the general issue. Martin v. Blanchett, 77 Ala. 288(2). It must be here asserted by special plea. McDonald v. McDonald, 215 Ala. 179, 110 So. 291(12).

■ Assignment of error No. 9 brings before us for consideration the ruling of the trial court as follows:

"Q. Alright sir, now then you said something about a Million Dollar Club— would you explain that to us please?

"Mr. Norred (for defendant): We object to the form of the question now?

"THE COURT: Overruled. MR. NORRED: We except.

"Q. Go ahead, please sir?

"A. The Million Dollar Club was instituted the year that I took over as branch manager. It was an inducement to increase sales and—

"MR. NORRED: Judge, we are going to object again, this is calling for the conclusion of the witness, calling for opinions and hearsay, and it has not been established by the testimony as to what the Million Dollar Club is, or how he learned of it, and the facts that came to his knowledge— ·

"THE COURT: Overruled. MR. NORRED: We except."

Appellant contends plaintiff was allowed to explain the effect and significance of the so-called Million Dollar Club in a narrative manner without predicating his testimony on the facts leading to the conclusion expressed by the witness.

After the objection, witness further answered:

"Q. Go ahead?

"A. The Million Dollar Club was put into effect and of course the Mobile office was a member of the Million Dollar Club in that year, which means that we sold a million dollars in gross sales of houses. That was not the interest, that was the selling price and any interest involved with the selling price of the house. At the end of that year when it was determined that we were, I among others as a member of the Million Dollar Club, I received from the office in Tampa, Florida, a check in the mail for,—made out actually for $800.00, showing $200.00 had been taken out for income tax purpose; but the total check with the withholding was for $1,000.00, which was for being a member of the Million Dollar Club."

We think that the answer above did no more than state as a fact what constituted eligibility to the Million Dollar Club. It was not a conclusion of the witness as to conversations which he overheard. The ruling of the trial court was free from error.

Assignment of Error No. 10 charges error because the trial court admitted over the objection of defendant a conversation between plaintiff and Mr. Hires, Vice-President of defendant, that allegedly took place in November, 1963, after the 1964 fiscal year began. Plaintiff testified, in response to a question, that Mr. Hires told him that he had done a good job,—"he said if I do as good next year, he says 'you should receive $10,000.00 salary plus bonuses—salary and bonuses next year.' That's the way he put it to me."

We think this conversation with Mr. Hires alluded to an alleged conversation of witness with Mr. Ned Smith in April, 1961, wherein Mr. Smith allegedly told witness "that if I performed and got the nominal amount of business I would receive not less than $2500.00; that if I got the business it would be more. He said none of the managers received less than $2500.00." Mr. Hires' alleged statement tended to reaffirm the Smith promise about which the witness had already testified.

We think the objection was overruled without prejudice to appellant.

Appellant's Assignment of Error No. 11 is predicated on the refusal of the trial court, after objection by plaintiff, to let the witness, Sam Salario, an employee of appellant, testify as to the market value of some lots upon which were located some dwelling houses in the Mobile area that had been sold while plaintiff was manager.

Witness has inspected lots and evaluated them in many of the 32 states in which appellant operated. There was no evidence

that he had at any time purchased or sold lots in the Mobile area, or otherwise had he been engaged in said area as a realtor. It seems that witness was sent by his company, defendant, to appraise the lots without prior knowledge of them.

It is elementary law that the inquiry as to an expert's competency is addressed to the sound discretion of the trial court, whose decision on the evidence will not be disturbed on appeal except for palpable abuse. Kirby v. Brooks, 215 Ala. 507, 111 So. 235(4). There was no abuse of discretion in this instance.

However, appellant cites § 367, Title 7, Code of 1940, as follows:

"Direct testimony as to the market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion."

Under the above statute one need not be an expert to testify as to value of real estate if he has had an opportunity for forming a correct opinion.

We omit considering the application of this statute to the instant ruling of the trial court because we think the ruling was without prejudice to defendant. Plaintiff's claim and right to recover a bonus hinged upon the gross sales of dwelling houses in the Mobile area during the fiscal year 1963-64, and not such gross sales after deducting losses from delinquencies and foreclosures, either or both. Under the manner of doing business, the rush of sales, and the numerous responsibilities, that plaintiff says he assumed at the instance of defendant, it was almost certain there would be a quota of losses. The net profits from all sales might have been less than anticipated, but under the contractual circumstances the losses were not chargeable against the bonus of plaintiff which defendant, according to plaintiff, expressly or impliedly promised.

In view of the jury's verdict for an amount not exceeding the minimum bonus admeasured by the defendant, the question of defendant's good faith in discharging plaintiff does not arise on this appeal. Therefore, Assignment of Error No. 13 is without merit.

Assignments of Error 14 through 38 are related to Assignment of Error No. 11 which we have held to be without merit. We likewise hold that this group has no legal efficacy.

Assignment of Error No. 42 claims error of the trial court in sustaining an objection of the plaintiff as follows:

"Q. What did Mr. Knodel say?

"MR. SEALE: Object no proper predicate has been laid.

"THE COURT: Sustained."

The above evidence related to the Landrum account which was delinquent. We have reviewed the questions and answers leading up to the question above set forth. We are unable to see the relevancy of the answer sought by the question. The issue before the jury was whether or not defendant agreed to pay a bonus to plaintiff for achieving gross sales in his area. Repossession of mortgaged homes that were sold was not material to this issue. We do not overlook the fact that the trial court admitted much evidence concerning repossessions that is not before us for review.

The trial court did not err in sustaining objections on the part of plaintiff as shown in Assignments of Error 43 to 46 inclusive. The questions called for immaterial testimony.

Appellant, in Assignment of Error No. 48, claims error when the trial court overruled its objection to argument of counsel for plaintiff to the jury as follows:

"There is not one thing in the evidence that shows that they lost anything on those houses,—for all that appears from

the testimony, they made a profit on moving the houses."

"MR. NORRED: Your Honor, we object, because of your Honor's ruling we were prevented from showing the costs of moving the houses. We submit that is improper argument.

"THE COURT: Overruled."

There was considerable evidence about moving some of the houses which plaintiff had sold while manager of the Mobile area. The aforequoted argument was improper and irrelevant to the issue upon which payment of a bonus was predicated.

However, we do not think in light of the whole record, which we have reviewed at length, and of the issues, that such argument was prejudicial to defendant. Supreme Court Rule 45, 279 Ala. XXI, XLI. We are unwilling to reverse the judgment because of such argument.

Assignment of Error No. 49 is as follows:

"For that the Trial Court erred in overruling Appellant's objection to the question propounded to appellee, Fred Knodel:

"Q. Now you have stated I believe that you were promised at least $2500.00 as a bonus?

"A. Yes, sir.

"MR. NORRED: Your Honor, we object to that, it assumes a fact at issue, and it is repetitious.

"THE COURT: Overruled."

■ This question referred to prior testimony wherein plaintiff testified as to a conversation between him and Mr. Smith and Mr. Hires, company officials. The question and answer were repetitious, but not prejudicial to justify reversal. Supreme Court Rule 45, supra.

The argued assignments fail to point out prejudicial error in the several rulings of the trial court. The judgment is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.