This is an appeal from a judgment of declaration of rights under a real estate sales contract and an award of $8,463.85 to plaintiff as a real estate sales commission. We affirm.
Plaintiff Harris brought an action for declaratory judgment and affirmative relief for damages against defendants Pirtle and Hickson. After oral hearing the court entered judgment against Pirtle and awarded damages to Harris. Pirtle appeals.
The evidence tends to show the following: Harris was a licensed real estate broker in Montgomery County. Pirtle was the owner of 394 acres of farm land. Hickson, a resident of Georgia was a prospective purchaser of farm land. Pirtle authorized Harris to secure a purchaser for some or all of his land. In the event of sale the commission of Harris was to be 7% of the sale price. Several contracts for sale of varying acreage by Pirtle were prepared by Harris and presented to Pirtle. Pirtle would not accept them for various reasons not related to price. The prospective purchaser at all times was Hickson. Hickson at all times negotiated on a per-acre price of $625. The number of acres was not particularly material to Hickson.
A contract was prepared by Harris on October 22, 1974, and signed by Hickson, for the sale of 200 acres on the east side of the Pirtle property for $125,000. Pirtle did not sign that contract because he did not know where the line would be after sale. In response, Pirtle told Harris that he would sell all the land he owned lying east of a certain fence.
Harris carried the proposal to Hickson, who requested to see a plat so that he could know what he was buying. Pirtle drew the fence line on a copy of a plat attached to his abstract and Harris carried it to Hickson. There was a notation written thereon. The notation was "224 7% 625.00 net." Harris stated that Pirtle made the notation. Pirtle denied it. Pirtle told Harris that he didn't know how many acres there were in the tract, but if the fence line followed the section line there would be 223 or 224 acres. However, he said the fence line did not follow the section line and he had given a road right-of-way off the tract. He did not know how much less than 224 acres there was in the tract.
Harris then drew a contract for sale of 224 acres "more or less" at a price of $140,000. The contract further provided that an exact description was to be provided by deed after a survey at the expense of the seller. Pirtle stated that Harris suggested the use of the phrase "more or less" since the exact acreage in the tract was unknown. However Pirtle knew that there were considerably less than 224 acres.
Pirtle and Hickson each signed the contract dated October 26, 1974. Hickson paid $10,000 to Harris in earnest money.
Shortly after Thanksgiving Day, Harris, Pirtle and Hickson met on the property. Pirtle showed Hickson the property to be sold and where the lines would run.
The survey was completed on December 16, 1974, and disclosed there were 193.46 acres in the tract lying east of the designated fence.
On January 22, 1975, Hickson, through his attorney, inquired of Harris as to the status of the transaction. On January 27, 1975, Harris sent Pirtle a copy of Hickson's letter and asked for advice from Pirtle as to whether the survey had been completed. Subsequently Hickson came to Montgomery and met with Pirtle. He told him in effect that since it appeared there were not 224 acres in the tract there was a "new ball game." They then decided to go to the property to determine if something could be *Page 1020 
worked out considering the reduced acreage. Harris saw them and followed them to the property. Pirtle asked Harris to leave and he refused to go. Pirtle then left. Hickson asked for his earnest money to be returned. Harris refused. Hickson stated he did not want to get the land through a lawsuit.
On January 29, 1975, Pirtle's attorney notified Harris that Pirtle and Hickson agreed to rescind the contract and demanded that Harris return the earnest money or suffer suit.
After hearing the testimony the court entered its decree finding that Pirtle had agreed to sell his land east of the fence for $625 per acre; that Harris had procured a buyer, ready and willing to purchase on the agreed terms; that Pirtle refused to consummate the sale; that the contract to sell was rescinded by Pirtle and Hickson; that Harris was due to recover his 7% commission from Pirtle based upon 193.46 acres at $625 per acre, or $8,463.85.
Appellant Pirtle contends on appeal that the court misapplied the law to the facts. We have difficulty following the reason for this contention. Pirtle contends that the contract between him and Hickson was rescinded because of a mutual mistake as to the quantity of land. There never was a meeting of the minds of the parties. Therefore, Harris was not entitled to a commission because there was no constructive consummation of the sale.
It appears that the correctness of Pirtle's contention was a question of fact to be determined by the trial court after oral hearing. There is no dispute that it is the law that if a broker brings the minds of the buyer and seller to an agreement on the terms of sale and the buyer is able, ready and willing to buy, there is a constructive consummation of the sale and the broker's fee has been earned. The final completion of the sale between buyer and seller thereafter is not required.Taylor v. Riley, 272 Ala. 690, 133 So.2d 869. Whether the minds of buyer and seller were brought together is to be determined by the contract executed between them. If the terms of the contract are expressed in clear and unambiguous terms, there is no need to look further. However, if there is uncertainty and ambiguity in the contract, it is the duty of the court to construe it so as to express the intent of the parties.Southern Cafeteria Operating Company, Inc. v. Eley, 52 Ala. App. 656, 296 So.2d 743. In determining the intent of the parties, the court is free to look at surrounding circumstances, the situation of the parties, subject matter, the conditions under which the parties contracted, and the object to be accomplished. Flagg-Utica Corporation v. City of Florence,275 Ala. 475, 156 So.2d 338.
A contract including terms such as "East 224 acres more or less . . . exact description to be furnished by deed-seller to furnish survey of east 224 acres more or less," which is subsequently rescinded by the seller when the survey shows 30 acres less than 224, may be determined to be lacking in certainty of expression of intent when considered in light of surrounding circumstances. In the instant case, there was no objection by Pirtle to the presentation of testimony of circumstances surrounding the execution of the contract, either those before or after.
Having heard extensive evidence as to the circumstances of the negotiation and execution of the contract, it became the duty of the trial court to consider the written contract in light of such evidence and find therefrom the intent of the parties. The finding of the trial court after hearing the evidence is viewed upon appeal with a presumption of correctness if supported by credible legal evidence. Rafield v.Johnson, 294 Ala. 235, 314 So.2d 695.
Pirtle insists that there was mutuality of mistake in the sales contract. The evidence is to the contrary. The fact, if it be a fact, that the parties executed a contract with terms which meant one thing to the seller and another to the buyer does not amount to mutuality of mistake. Mutuality of mistake in relation to contracts means a common mistake. The parties meant or intended one thing but the contract expresses *Page 1021 
another. This usually occurs in the drafting and execution of an instrument which does not truly express the agreement of the parties. Clipper v. Gordon, 253 Ala. 428, 44 So.2d 576. The evidence produced by plaintiff is not that the parties reached an agreement and the written contract expressed another, but rather that the terms of the executed contract meant one thing in the mind of the seller and another in the mind of the buyer. That is not mutual mistake, but a failure to have a meeting of the minds resulting in an invalid contract.
We consider that the evidence of the circumstances and conditions surrounding the negotiation and execution of the written contract supports the finding of the trial court that it was the intention of Pirtle to sell the land east of his fence line, whether it turned out to be 224 acres, or more-or less, at a price of $625 per acre, and that Hickson intended to buy the tract at $625 whether it was 224 acres, more or less.
The trial court was free to believe the testimony of Harris and Hickson, as opposed to that of Pirtle. Such testimony was strengthened by the circumstances of the previous contracts presented to Pirtle and from that executed by him. Each contract price, when divided by the acreage to be sold, resulted in a figure of $625 per acre. Pirtle found no fault in the contract for the sale of 200 acres for $125,000, or $625 per acre, insofar as the price was concerned. He rejected it only because he did not know where the line would fall in relation to the remainder of his land. It could reasonably be inferred that if he would have sold the land in one instance at $625 per acre, he would agree to sell the same land at $625 after a survey disclosed where it lay or when it was made clear that it lay east of a known fence line. The court was further free to believe the testimony of Harris that Pirtle entered the figures of "224 7% $625 net" upon the plat submitted to Hickson through Harris.
If such evidence was believed, the court could construe the contract according to its determination of the intent of the parties. This action was a suit for a broker's commission due after bringing a willing buyer to a willing seller. It was not a suit to enforce the contract. The fact that the parties to the contract chose not to fulfill its terms is immaterial to a right of recovery. The trier of fact determined there was an enforceable consummated contract of sale between buyer and seller. The evidence supports such finding. This court does not find the judgment clearly wrong or unjust. Nor do we find that the court erroneously applied the law to its finding of fact.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.