Defendant appeals from summary judgment granting damages to plaintiff for breach of a real estate broker's listing agreement.
Plaintiff brought suit alleging that defendant executed a written agreement authorizing plaintiff for a commission to find a purchaser for the home owned by defendant and his wife at a price and upon terms set out therein; that plaintiff found a purchaser, ready, willing and able to purchase according to the terms of the agreement and that the offer to purchase was accepted by defendant; that defendant refused to convey title is agreed causing plaintiff to lose the commission and expend money while finding the purchaser another home.
Defendant stated in defense that plaintiff knew through its listing agent that the property was owned jointly by defendant and his wife and was occupied as their homestead; that said agent knew at the time defendant signed the listing agreement that defendant's wife was in a hospital and incompetent and would be unable to execute valid title to a purchaser; that said agent knew that title to the homestead could not be conveyed without the voluntary signature of the wife; and that the failure of defendant to convey title was because of the refusal of the wife to execute a deed.
Plaintiff moved for summary judgment on the pleadings and affidavits. The affidavits supported the allegations of the complaint and in summary were as follows:
The listing agreement was executed by defendant with plaintiff on October 13, 1975. Agents of plaintiff showed the house to prospective purchasers at least nine times between October 13 and November 16, 1975. An offer to purchase the house was secured from Captain and Mrs. Heath at a price $2,000 above the listing price. The offer was communicated via phone to defendant who authorized plaintiff to accept on his behalf. The acceptance was signed by a vice president of plaintiff as agent for defendant. Defendant later came by and added his signature. All papers were prepared for closing with an approved V.A. loan. A deed was sent to defendant's wife. She refused to sign.
The listing agreement was secured from defendant by a Mrs. Converse, an agent of plaintiff. She had sold the property to defendant and his wife in 1973. Defendant requested Mrs. Converse to find a purchaser. He told her his wife was then in the hospital but gave no details as to her confinement. He asked if it was necessary that his wife sign the agreement. Mrs. Converse, knowing he was anxious to list the home, told him he could sign and his wife could sign later. Subsequently, Mrs. Converse talked with defendant's wife on occasion by phone and arranged with her for prospects to view the home. Defendant's wife said nothing to Mrs. Converse as to any unwillingness to sell.
Defendant responded to plaintiff's motion by his own motion for summary judgment and filed affidavits with citations of law.
Defendant stated that his wife entered the hospital on October 11, 1975 and remained hospitalized until October 21. He thought that he would sell the home and when she got out of the hospital, he would send his wife to her people in Louisiana. When he contacted Mrs. Converse to list the home, he told her his wife was sick in the hospital and was having mental and marital problems. Defendant asked if he could put the house up for sale without his wife's agreement. Mrs. Converse told him he could and he signed the agreement. His wife was then mentally unstable and was later treated in a mental unit. His wife came home on October 21 and was most of the time highly tranquilized and asleep. On November 4, she went to Louisiana and was treated there until January 13, 1976. Mrs. Converse came to the home on several occasions and saw that his wife was in no condition to decide whether to sell or not sell the home. On November 17, 1975, defendant's name was signed to the offer to purchase by an employee of plaintiff after consultation *Page 64 
with him on the phone. He told plaintiff's agent of his wife's condition and asked him about the wife signing. Plaintiff later attempted to get the wife to sign a deed and she refused saying she had not agreed to sell initially and did not want to sell at that time.
Defendant's wife stated she took an overdose of sleeping pills on October 11, 1975, and was in an intensive care unit for three days. She later was transferred to the mental ward and subsequently to a private psychiatric hospital. She went home on October 22nd and remained until November 4, 1975. She then went to Louisiana for psychiatric treatment and returned home on December 20, 1975. While in Louisiana she called Mrs. Converse by phone, telling her that she had learned that her house was up for sale and that she wanted it taken off the market as she was returning to Mobile. Mrs. Converse told her that the house had been sold and that the purchaser was to move in on December 15. The wife then said she had not signed any papers and the house could not be sold without her signature.
Summary judgment is proper when the materials on file show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 (c), ARCP.
It is the law in Alabama that when a real estate broker, retained by contract to find a purchaser for real estate, procures a buyer who is ready, willing and able to purchase according to the terms set by the vendor, the broker has earned his commission even though the vendor later refuses to complete the sale. Pirtle v. Harris, 338 So.2d 1018 (Ala.Civ.App. 1976);Lanton v. Holly Realty Co., 56 Ala. App. 78, 319 So.2d 276
(1975).
As a general rule the fact that the property offered for sale is a homestead and is owned jointly by the wife and the husband, and the vendor is unable to convey title because the wife refused to join in the conveyance, does not affect the obligation of the husband to pay the broker's commission. Knowledge by the broker at the time of execution of the listing agreement by the husband, that the property to be sold is a homestead and that the joining by the wife was necessary to a conveyance does not affect the broker's right to recovery. 10 A.L.R.3d 665.
In the case of Cofield v. McGraw Garner, 16 Ala. App. 369,77 So. 981 (1918) the defendant husband had agreed to pay plaintiff a commission for obtaining a purchaser for his homestead. A ready, willing and able purchaser was obtained and defendant failed to convey title. The court said:
 "The fact that the defendant could not convey the lands he employed the plaintiffs to sell without the voluntary signature and assent of his wife certainly does not avoid the defendant's obligation to pay the plaintiffs for their services in procuring a purchaser for the land at defendant's instance, and in accordance with the contract between the parties." 16 Ala. App. at 370, 77 So. at 982.
The court also held frivolous a plea that the contract was void because it related to the homestead and the wife had not signed and acknowledged it. It was pointed out that the enforcement of the obligation to pay a broker's commission by the defendant did not affect his homestead rights by fastening any lien or encumbrance thereon. It follows that no property right of the wife is affected by the husband's contractual obligation to pay a broker's commission. The case of Morgan v. Whatley Whatley,205 Ala. 170, 87 So. 846 (1920), supports the decision inCofield v. McGraw Garner, supra.
There is no dispute that defendant signed the sales authority agreement with plaintiff. It was his stated intention that plaintiff find a purchaser for his home so that his wife could return to Louisiana when she recovered from the overdose of sleeping pills. It is without dispute that plaintiff found a purchaser and defendant accepted the offer of purchase.
Defendant seeks to avoid the contract on the theory that it was to be a tripartite agreement and not effective until signed by *Page 65 
his wife. We find no reasonable support in the defendant's affidavits for such theory. By his own affidavit, defendant merely asked if it was necessary for his wife to sign the sales authority. This query did not indicate any wish for delay until she signed. He knew that she was at that time in intensive care and physically unable to sign. He, in fact, clearly discloses that he wished immediate action by plaintiff so that a purchaser could be found. Defendant was told truthfully by plaintiff that the signature of his wife was not necessary to authorize plaintiff to seek a purchaser. Defendant's theory must fall in the face of the undisputed evidence that he subsequently ratified the agreement by accepting the results of plaintiff's service and even accepted the offer of purchase.
The remaining theory is that plaintiff could not recover because it knew that at the time of the execution of the listing agreement that the defendant's wife was mentally incompetent to sign a conveyance. We first comment that we find no evidence that plaintiff knew that defendant's wife was mentally incompetent at the time of entering the agreement. Defendant's affidavit states that he told Mrs. Converse that his wife "was sick and in the hospital; that she was having mental problems and we were also having marital problems . . ." Such statement does not disclose incompetency.
Even if it were a fact that at the time of signing the agreement defendant's wife was mentally incompetent, it would be immaterial, as there is no question that she was competent and able to execute a conveyance when requested by plaintiff after a purchaser was obtained. It was not the incompetency of the wife which prevented performance by defendant. It was her refusal to sign the conveyance which caused the breach of the agreement.
Plaintiff was never advised that defendant's wife opposed a sale or would be unwilling to sign a conveyance until after the purchaser was secured. There was no intimation of any unwillingness by the wife during the time prospects were being shown the house though she was present on some occasions. If defendant knew of his wife's unwillingness to convey, he had opportunity to inform plaintiff to discontinue efforts to find a purchaser. Defendant obviously did not know of her unwillingness on November 17 when the offer to purchase was accepted by him. Absent a knowledge by the realtor of a defect sufficient to prevent conveyance of a good title or of the unwillingness or inability of the wife to join in a conveyance, it is our opinion that a husband is liable under a sales authority contract for the commission if the realtor secures a ready, willing and able purchaser. The joinder of the wife in the contract is not required. Morgan v. Whatley Whatley,supra; Cofield v. McGraw Garner, supra.
It is the opinion of the court that there was no genuine issue of material fact and that plaintiff was entitled to judgment as a matter of law. We affirm.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.