This is an appeal from a judgment which awarded a real estate sales commission to United Farm Agency of Alabama, Inc. Motions for judgment notwithstanding the verdict and, in the alternative, new trial, were denied:
R.Y. Williamson was the owner of a motel located in Andalusia, Alabama. In 1975, he entered into an exclusive listing agreement with United to sell the motel. Under the terms of the listing agreement Williamson was obligated to pay United a ten percent commission if the motel was sold by United or anyone else during the ensuing year at the stated price and terms, or at any other price or terms acceptable to Williamson.
Several weeks before the listing agreement expired on July 18, 1976, Joe Sanders began working at the motel so that he could familiarize himself with the business. Two days prior to the expiration of the listing agreement Sanders paid Williamson $10,000.00 and executed the following instrument:
TO WHOM IT MAY CONCERN
 As of July 16, 1976, Joe R. Sanders assumes full management of the Town Line Motel, 29 By Pass West, Andalusia, Alabama 36420. In this, the above assumes *Page 761 
total expense necessary for upkeep and operation of said business; this includes maintenance of all properties, labor, utilities, taxes, and insurance. In addition to this, Joe R. Sanders agrees to pay R.Y. Williamson or Faustine V. Williamson $3,262.12 on the 16th of each month for twelve consecutive months following the above date.
 In the event that both R.Y. Williamson and Faustine V. Williamson should die, each monthly payment for the balance of this contract and for 228 additional consecutive payments is to be divided equally between Richard Dwayne Williamson and Brenda Juline Williamson.
 In the event that Joe R. Sanders should die before the expiration of this contract, his wife, Doris Sanders, may elect to continue this contract or to receive $10,000.00 plus accumulated money in excess of 8% interest on a selling price if a sale had been made.
 /s/ Joe R. Sanders
Joe R. Sanders /s/ R.Y. Williamson
R.Y. Williamson
/s/ Notary
Williamson never delivered, and Sanders never demanded, a deed to the motel or surrounding property. United neither procured Sanders as a prospective purchaser nor participated in the execution of the Sanders-Williamson agreement.
Sanders took possession of the property on July 16, 1976, and continued to operate the motel until October of 1978, when Mr. and Mrs. Patel entered into negotiations with Williamson to purchase the motel. As the negotiations progressed, Sanders filed a suit against Williamson in which he alleged that Williamson was threatening to breach his contract to sell the property to Sanders by negotiating with the Patels. Through a series of agreements, Sanders acquiesced in the sale to the Patels in exchange for $55,000.00 of the $80,000.00 down payment from the Patels to Williamson and a $75,000.00 mortgage from the Patels payable to Sanders. Williamson, not Sanders, then executed a deed to the Patels.
After the sale to the Patels had been completed, United sued Williamson to recover its ten percent commission due on the alleged sale to Sanders. Upon trial, the jury returned a verdict in favor of United in the amount of $48,000.00 (10% commission plus interest). Williamson then appealed to this Court.
The pertinent provisions of the United-Williamson exclusive listing agreement state:
 (C) I agree to pay you forthwith as commission 10% of the selling price when a purchaser is procured through you, or your representative, at the stated price and terms, or at any other price and terms acceptable to me.
 (D) By this agreement I give you the sole and exclusive right to sell the property described herein. If said property is sold during the term of this agreement at a price and upon terms acceptable to me to a purchaser procured by me or through agencies other than yours or by any other party whomsoever, I agree to pay you forthwith the amount of commission provided in clause (C).
The general rule applicable to broker contracts of this nature is that, "[a]s between a landowner and a real estate broker, an agreement of the latter to sell the former's property usually means to negotiate for sale by finding a purchaser ready, willing and able to consummate the transaction." De Briere v. Yeend Bros. Realty Co., 204 Ala. 647,648, 86 So. 528 (1920) (citations omitted). Ordinarily the sale is deemed to be "constructively consummated insofar as the broker's right to a commission is concerned" when the broker procures a ready, willing and able purchaser, Foote v. Moore,342 So.2d 906 (Ala. 1977), even though the sale is never consummated. Brown v. Robinson, 354 So.2d 272 (Ala. 1978);Alabama Fuel Sales Co., Inc. v. Vulcan Energy Resources Corp.,339 So.2d 1007 (Ala. 1976); Guillote v. Pope Quint, Inc.,349 So.2d 62 (Ala.Civ.App. 1977). Although these general rules govern the rights and duties of the parties under clause (C) of the United-Williamson contract, they do not control this case *Page 762 
because United did not procure Sanders as a purchaser of the property.
The operation of clause (D) is at issue in the present case. That clause provides that United would be entitled to its commission in the event the property was "sold" by Williamson or any other party during the term of the contract. This implies that something more than mere negotiations with a ready, willing and able purchaser must transpire before United would have earned its commission. By this clause, the parties conditioned United's right to recover its commission upon the completion of a contract of sale. Therefore, United cannot recover its commission in this action under clause (D) unless Williamson actually agreed to sell the property to Sanders. SeeShook v. Davis-Day Timber Co., Inc., 331 So.2d 667 (Ala. 1976);Eldorado Coal Co. v. Rust Shelburne, 202 Ala. 625, 81 So. 567
(1919).
Williamson contends the trial judge erred by denying his motions for directed verdict, motion for judgment notwithstanding the verdict and, in the alternative, new trial. In support of this position he argues that the Sanders-Williamson agreement is, on its face, not a contract of sale and, further that it fails to constitute such an agreement because it does not contain the requisites of a valid contract for the sale or alienation of real property. He therefore contends that the jury could not have, as a matter of law, concluded that he sold the motel to Sanders. We disagree.
We note at the outset that this is not a case where a party to an oral contract to convey real property seeks specific performance of that agreement. Nor is this a case where reliance is placed upon one document as singular and conclusive proof of a contract of sale. We also note that the Statute of Frauds, Code 1975, § 8-9-2, was not raised as a defense to this alleged contract. Thus, the requirement of a writing imposed by the Statute of Frauds is waived. Jim Walter Corp. v. Knodel,281 Ala. 173, 200 So.2d 473 (1967). It is therefore of no consequence in this case that the alleged contract of sale is partially based upon oral agreements.
Williamson contends the written agreement upon which United relies constitutes a "net lease." United, on the other hand, argues that this document, coupled with the testimony of several witnesses that Sanders purchased the motel from Williamson, is evidence that the motel property was in fact sold to Sanders. It is Williamson's position that the trial judge erred by admitting, over objection, Sanders's testimony of oral agreements which varied to some extent the terms of their written agreement. We disagree.
Even from a cursory review of the Sanders-Williamson written agreement it is unclear whether it constitutes a lease, option to purchase or contract of sale. The last sentence of the first paragraph indicates that the agreement binds the parties for only twelve months. The second paragraph, however, indicates that upon the occurrence of certain events the contract was to remain in effect for an additional nineteen years. This conflict is further compounded by the provisions of the third and final paragraph. It is unclear whether the phrase "if a sale had been made" indicates that the property was still subject to sale as of July 16, 1976, or whether the parties contemplated the finalization of a sale to Sanders at a later date. Furthermore, the amount and duration of the monthly payments due under the contract in the event that the specified events occurred approximate those that would be due on an 8% twenty-year mortgage of an amount equal to that of the motel's advertised selling price.
The contract is unquestionably ambiguous. It is susceptible of the interpretation given by United as well as that given by Williamson. A fact question as to the parties' intent existed. Under these circumstances the trial judge properly admitted parol evidence relating to the parties' prior and subsequent negotiations in addition to their intent in executing the written contract. Parker v. McGaha, 294 Ala. 702, 321 So.2d 182
(1975); Johnson-Rast Hays, Inc. v. Cole, 294 Ala. 32,310 So.2d 885 *Page 763 
(1975). See also Engineers of the South, Inc. v. Goodwin,366 So.2d 673 (Ala. 1979); Pirtle v. Harris, 338 So.2d 1018
(Ala.Civ.App. 1976).
Williamson maintains that the written agreement does not constitute a valid contract for the alienation of real property because it fails to contain words of conveyance, an adequate description of the property or a recitation of the consideration for the alleged sale. We agree that words of conveyance are necessary to a valid contract of sale of real property. Ashurst v. Rosser, 275 Ala. 163, 153 So.2d 240
(1963). We think that in this case, however, because it is not a suit for specific performance and because the Statute of Frauds has not been asserted, the words of conveyance may be supplied by parol evidence. The general description of the property, i.e., "Town Line Motel, 29 By Pass West, Andalusia, Alabama 36420," may also be made specific and certain by parol evidence. Goodwyn v. Jones, 288 Ala. 71, 257 So.2d 320 (1971);Clipper v. Gordon, 253 Ala. 428, 44 So.2d 576 (1950). Furthermore, we think that the consideration for the alleged conveyance was sufficiently recited: Sanders was obligated to pay Williamson $3,262.12 per month for at least twelve months, and was conditionally obligated to pay the same monthly amount for an additional nineteen years.
Sanders testified that he purchased the motel from Williamson. This claim was supported by the testimony of the Andalusia Mayor Pro Tem that Williamson told him in 1976 that Sanders owned the Town Line Motel. Considering this testimony in conjunction with the Sanders-Williamson written agreement and the parol testimony properly admitted at trial, we are of the opinion that there was sufficient evidence in support of United's claim to send to the jury the question of whether or not Williamson did in fact sell the motel to Sanders. Therefore, the trial judge did not err by denying Williamson's motions for directed verdict.
"[A] post-trial motion for J.N.O.V. is really just a renewal of a party's motion for directed verdict, and the J.N.O.V. motion cannot be granted unless the motion for directed verdict should have been granted." Great Atl. Pac. Tea Co., Inc. v.Sealy, 374 So.2d 877, 881 (Ala. 1979); Housing Authority of theCity of Prichard v. Malloy, 341 So.2d 708 (Ala. 1977). Given that Williamson's motion for directed verdict was properly denied, it follows that the trial judge also properly denied Williamson's motion for judgment notwithstanding the verdict.
A trial judge is vested with wide discretion when determining whether to grant or deny a party's motion for new trial. In the present case, the trial judge's ultimate decision to deny Williamson's motion does not appear to be plainly and palpably erroneous. Accordingly, it is due to be affirmed. Hill v.Cherry, 379 So.2d 590 (Ala. 1980); Trans-South-Rent-A-Car, Inc.v. Wein, 378 So.2d 725 (Ala. 1979).
Finally, Williamson contends that this Court should reverse the trial judge's denial of his motion for new trial because the jury's verdict is contrary to the great weight of the evidence.
Upon appellate review of a jury verdict, this Court indulges in all favorable presumptions as to the correctness of the jury's determination of a question of fact and will not disturb their determination unless it is plainly erroneous or manifestly unjust. Winn-Dixie Montgomery, Inc. v. Henderson,371 So.2d 899 (Ala. 1979). This presumption of correctness is strengthened when a motion for new trial is denied by the trial judge. Walker v. Cardwell, 348 So.2d 1049 (Ala. 1977). In the present case the jury was presented with a question of fact of whether Williamson sold the motel property to Sanders. They determined that he did. The trial judge denied Williamson's motion for new trial. A review of the evidence adduced at trial, as well as the reasonable inferences therefrom, lead us to conclude that the jury's determination of this fact issue is not plainly erroneous or manifestly unjust. *Page 764 
For the foregoing reasons the judgment below is due to be affirmed.
AFFIRMED.
FAULKNER, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.