(7 App. Div. 113)

### NICHOLLS v. GRANGER.

(Supreme Court, Appellate Division, First Department.    June 29, 1896.)

CONTRACTS—MEETING OF MINDS.

> Plaintiff and defendant, having concluded to dissolve a partnership existing between them, drew up and signed a paper by the terms of which defendant was to buy all plaintiff's interest in the firm for a certain sum, and, in addition thereto, an amount equal to one-half of the good accounts and bills receivable; the accounts of the parties were to be adjusted; and formal papers of dissolution, embodying the terms thereof, should be prepared and executed; and annexed to such formal agreement should be a schedule showing the indebtedness of the firm, the bills and accounts up to date; and, on delivery of such formal agreement, the consideration should be paid over to plaintiff, either in cash or in notes, with such indorsement as would enable the plaintiff to get them discounted without recourse. *Held*, that such paper did not constitute a binding contract, as it left matters open for future determination of the parties.

Appeal from judgment on report of referee.

Action by Mark M. Nicholls against John C. Granger to dissolve a partnership. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

D. S. Remsen, for appellant.

Antonio Knauth, for respondent.

VAN BRUNT, P. J.    This action was brought for the purpose of dissolving the co-partnership between the plaintiff and the defendant, the sale of the co-partnership assets, an accounting, and the appointment of a receiver. The defendant, in his answer to the complaint, set up that the plaintiff and defendant had on the 10th of August, 1894, entered into an agreement for the dissolution of the firm and the sale of its good will and assets to the defendant, at an agreed price to be ascertained as therein provided, and demanded an accounting of the co-partnership affairs, and that a referee be appointed to ascertain the amount of the consideration to be paid by the defendant to the plaintiff under said agreement of August 10th, and that, upon the payment of the sum so ascertained

to be due under said contract, the plaintiff specifically perform said contract; and certain other relief was demanded. By consent, the action was referred to a referee, to hear, try, and determine, and to take, state, and settle the account between the parties. The referee, after hearing the proofs and allegations of the parties, determined that the alleged agreement of August 10th was never a complete agreement, and could not be enforced as such, and gave the plaintiff judgment. From the judgment thereupon entered, this appeal is taken.

Various questions were raised upon this appeal which it is not necessary to consider in view of the conclusion at which we have arrived in respect to the right of the defendant to enforce the alleged contract of August 10th. It appeared from the evidence that, disputes having arisen between the partners in reference to the conduct of the business, they concluded to dissolve. To that end, they met; and, after some discussion, the paper of the 10th of August was drawn up and signed by the parties, by the terms of which the plaintiff agreed to sell, and the defendant agreed to buy, all the interest of the plaintiff in the firm, including the good will of the business, machinery, plant, stock of goods, and materials on hand, the defendant to pay the plaintiff $2,500 therefor, and, in addition thereto, an amount equal to one-half of the good accounts and bills receivable of the firm (less the firm debts), upon which one-half the plaintiff was to allow the defendant a uniform discount of 10 per cent., the same to be paid as in such agreement thereinafter provided. The agreement further provided, among other things, that the accounts of the parties were to be adjusted, and, if either one had overdrawn, the difference was to be adjusted. It further provided that formal papers of dissolution, embodying the terms therein contained, should be prepared and executed, and annexed to such formal agreement should be a schedule showing the indebtedness of the firm, and also showing the bills and accounts receivable up to date; and that, upon the delivery of such formal agreement, the consideration mentioned in said agreement of August 10th should be paid over and delivered to the plaintiff, either in cash or in notes, with such indorsement as would enable the plaintiff to get them discounted at the bank without recourse. Such formal agreement was to be executed and delivered on the 13th of August, 1894. On the 13th of August, 1894, the day fixed for signing the formal agreement, the parties met; but they did not agree, and could not agree, as to what accounts were good, or as to the adjustment of their individual accounts, and the amount of the consideration to be paid therefor could not be determined. No further agreement was executed, and this action was subsequently commenced by the plaintiff.

It is urged upon the part of the appellant that the contract of August 10th was not rendered incomplete by the use of the words "good accounts and bills receivable," because they have a well-defined meaning in business and in the law; and if the contract showed what the parties intended, and they expressed their intentions, so that the court could execute them, a valid and binding

contract existed, and, there being no uncertainty as to what good and collectible accounts meant, the court could determine the amount of the consideration to be paid. It is undoubtedly true that a stipulation to reduce a valid contract to some other form does not affect its validity, and that although it is in contemplation of the parties that a more formal contract shall be executed, where an agreement in writing is executed by the parties, containing all the requirements of a valid contract, although the formal contract is not executed, there is a valid contract, which may be enforced. Sanders v. Fruit Co., 144 N. Y. 209, 39 N. E. 75.   But it is an essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the contract; and, if anything is left open for future consideration, the informal paper cannot form the basis of a binding contract.   Applying these rules to the case at bar, the question is:   Had the parties arrived at an agreement upon all the terms as well as the subject-matter?   It is apparent that they had not. The informal agreement provided for the adjustment of the accounts, for the taking of the good accounts by one of the parties, for the making of a schedule of such good accounts, which was to be annexed to the formal agreement, and the method in which the consideration was to be paid in the alternative; and, if indorsed notes were offered, it is apparent that it was intended that the plaintiff should determine as to the character of the indorsement.   There is nothing in the contract which contemplates the leaving of these things not definitely determined in the informal paper of August 10th to anybody but themselves.   They were to determine as to what were good accounts and what were not, and it was not the intention of the parties that it should be left to the court or to anybody else.   It is undoubtedly true that if a paper is intended to be a final agreement by the parties, and there is in it anything indefinite, which may be made definite by the action of the court, the court may supplement and make definite that which is indefinite. But where the parties contemplate by their own actions in a formal agreement to make that certain which is uncertain in an informal agreement, which is not intended to be the final agreement, there is nothing which the court has any jurisdiction to enforce.   That is the case at bar.   The parties were negotiating for the settlement of their affairs; they had agreed upon the basis on which their affairs were to be settled; they had agreed upon certain details; and they executed an informal agreement, leaving to future negotiations the settlement of the details when the formal agreement should be executed.   It is evident that it was not in the contemplation of the parties that any rights should be fixed and determined by reason of this informal agreement.   Under these circumstances, it is difficult to see how the court can seize hold of a subject the right over which the plaintiff has never relinquished.

It is urged that if the informal contract shows what the parties intended, and had so expressed their intentions that the court can execute them, the contract is valid.   But this is not true in respect to a paper which is not intended to settle all controversies, or to

dispose of the subject of the negotiations. It undoubtedly would be true if the parties had agreed to leave the matter in that way. But they did not. They provided for the execution of an agreement which should contain other provisions than those contained in the informal agreement of August 10th. Under these circumstances, the paper is to be treated as nothing but a step in a negotiation looking to a final settlement.

We are of opinion that the judgment is right, and should be affirmed, with costs. All concur.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.