This is an appeal from the Circuit Court of Mobile County's action awarding damages to appellee-Lang for breach of agreement. The appellant-Coley appeals.
The record reveals the following: Lang sued Coley for specific performance. Lang's complaint alleged that Coley and Lang had entered into an agreement *Page 72 
whereby Coley was to purchase the stock of Lang's corporation. The price was to be $60,000. The specific performance prayed for was the payment of $60,000. The complaint was later amended to include a claim for damages incurred by Lang in reliance on Coley's promise to buy the stock.
After a hearing ore tenus the trial court entered a judgment for Lang in the amount of $7,500 "due to their [Lang's] reliance upon the representation of the agreement by respondent [Coley] that he would purchase the stock. . . ." As noted earlier, Coley appeals from this judgment.
The issues as presented by appellant for this court's consideration are: (1) Did the "letter agreement" entered into by the parties contractually bind the parties? (2) Can the award be supported on the basis of promissory estoppel or reliance on a promise?
Viewing the trial court's decree with the attendant presumption of correctness, our review of the testimony as shown by the transcript of the evidence reveals the following:
Coley, in late August of 1972, entered into discussions with Lang concerning the purchase of IAS Corporation. Lang owned the vast majority of the stock of IAS. Coley did not desire to purchase the assets of IAS, but only desired to purchase the name and good will of IAS. Coley's purpose in acquiring the corporation was to enable Coley to be in a favorable position to bid on government contracts.
During the negotiation, the parties contacted an attorney, who represented Coley, and the following document was drafted and signed by each party:
"September 1, 1972
 "Mr. Robert J. Lang, President International Aerospace Services, Inc. Post Office Box 9516 Charleston, South Carolina 29410
"Dear Bob:
 "This letter is to express the agreement which we have reached today.
 "Subject to the approval of your Board of Directors and stockholders, you have agreed to sell to nominee to buy, all of the outstanding stock of every kind of International Aerospace Services, Inc. ("IAS"). The purchase price for the stock shall be the sum of Sixty Thousand Dollars ($60,000.00) payable as follows:
 "$10,000 on the date of sale; $8,000 on December 31, 1972; $21,000 on December 31, 1973, and $21,000 on December 31, 1974.
 "The unpaid portion of the purchase price shall be represented by a promissory note executed by me, or guaranteed by me for execution by my nominee. Principal payments due on the note shall not bear interest to their stated maturity, but any past due payments shall bear interest at the rate of 10% per annum.
 "It is our understanding that prior to the sale of the IAS stock to me you will cause IAS to transfer all of its assets and liabilities (other than its corporate name and the right to use that corporate name in foreign jurisdictions, and its corporate franchise) to a new corporation or partnership as you and the other present stockholders of IAS may determine. The new corporation or partnership, herein called IASCO, shall indemnify IAS against all liabilities of IAS which it has assumed. If IASCO fails to perform this indemnity and IAS is required to pay off liabilities assumed by IASCO, then I shall have the right to setoff any such payments against amounts due on the note representing the purchase price of the IAS stock. IAS will, of course, be responsible for any liabilities which it creates or incurs after you sell the stock to me. All work and contracts in progress of IAS shall be transferred to IASCO at the same time as the transfer of assets and liabilities.
 "I recognize that you must consider the method to complete this transaction to the best advantage of you and the other shareholders of IAS. We agree together that on or before September 18, this letter agreement will be reduced to a definitive agreement binding upon all of the parties hereto and accomplishing the sale *Page 73 
and purchase contemplated by this agreement.
 "You agree that until we reach a definitive agreement I may request bid sets from the government and attend bidding conferences on behalf of an in the name of IAS.
 "If the foregoing correctly reflects our agreement, please execute and return to me the enclosed copy of this letter.
 "Yours very truly, /s/ William H. Coley
"Agreed to and accepted.
/s/ R.L. Lang"
Both parties testified at great length regarding their understanding of the "letter agreement." Suffice it to say that Lang testified that the agreement was binding and only certain details remained to be done. Additionally, Lang testified that stockholder approval was obtained and further, that the corporation (Lang) had lost $30,000 as a result of the reliance on the "letter agreement." We should note that details of the loss are not spelled out with any degree of specificity.
Coley testified that the letter agreement was only a basic outline of points which had been agreed upon; that there remained many items that had to be worked out; and further, that time was of the essence.
Specifically, Coley testified that Lang had not sought approval of the IRS concerning a pension and profit sharing plan nor had certain details with the government been completed. And that because of this he (Coley) realized that the sale would not work out within the contemplated time frame. Coley, on September 18, 1972, notified Lang of this fact.
We note that Coley did attend certain bid conferences conducted by the U.S. Government and registered with the government as a representative of Lang's corporation. This action occurred after the "letter agreement" had been executed.
The attorney who drafted the "letter agreement" testified that he informed both parties that the document in question was not binding. Lang denied that the attorney so informed him.
The trial court, with the above before it, entered a decree which in pertinent part provided as follows:
 "THAT the Complainants are the stockholders and owners of the International Aerospace Services, Inc., and that heretofore on, to-wit, September 1, 1972, they, by and through their President, Robert J. Lang, entered into a preliminary agreement with the Respondent, William H. Coley to sell to the Respondent all of the outstanding stock of every kind of International Aerospace Services, Inc., with the purchase price being the sum of $60,000 to be paid in the following manner:
 "$10,000.00 on the date of the sale; $8,000.00 on December 31, 1972; $21,000.00 on December 31, 1973; and $21,000.00 on December 31, 1974.
 "THAT as a part of said preliminary agreement all of the assets and liabilities of International Aerospace Services, Inc., were to be transferred to a new corporation; the said Respondent was to purchase all of the stock, goodwill, and reputation of International Aerospace Services, Inc., a corporation, and the Respondent was authorized to request bids set for the United States Federal Government and attend bidding and conferences on behalf of and in the name of International Aerospace Services, Inc. The Court finds as a matter of fact that the Respondent or his said representative did attend pre-bid conferences and did use the name of International Aerospace Services, Inc.; that the said Respondent has failed and refused and continues to fail and refuse to pay any sum of money or to carry out any of the terms of the above mentioned agreement; that the Complainants have incurred certain expenses and have made certain preparations and plans to transfer all of the said outstanding stock to the Respondent; and to carry out the terms and provisions of the aforesaid preliminary agreement *Page 74 
between the Complainants and the Respondent.
 "The Court finds as a matter of fact, and it is hereby ORDERED, ADJUDGED and DECREED by the Court that the Bill for Specific Performance as filed by the Complainants is hereby denied.
 "It is further ORDERED, ADJUDGED and DECREED that the Complainants have and recover of the Respondent the sum of $7,500.00 as damages which the Complainants have suffered due to their reliance upon the representation of the agreement by the Respondent that he would purchase the stock of International Aerospace Services, Inc., including certain attorney's fees, accountants fees, loss of business, loss of income, loss of goodwill and reputation by the Complainants."
 I
We do not find as a matter of law that the "letter agreement" is an agreement upon which specific performance can be based.
Suffice it to say that the language found in Onyx Oils Resins v. Moss, 367 Pa. 416, 80 A.2d 815, and quoted to this court by appellant-Coley, in his excellent brief, is a correct statement of the law.
 "Aside from the intention of the parties to reduce their agreement to writing, it is admitted that there was no full and definite agreement on terms. In Nicholls v. Granger, 1896, 7 App. Div. 113, 40 N.Y.S. 99, 101, the court pertinently stated, `It is undoubtedly true that a stipulation to reduce a valid contract to some other form does not affect its validity, and that although it is in contemplation of the parties that a more formal contract shall be executed, . . . . But it is an essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms, as well as the subject matter, of the contract; and, if anything is left open for future consideration, the informal paper cannot form the basis of a binding contract.
 "We cannot enforce a portion of an agreement which failed to materialize; nor can we supply the terms of this contract."
Additionally, we find the language of Elmore, Quillian andCo. v. Parish Bros., 170 Ala. 499, 54 So. 203, to be appropriate in this instance:
 "[A]n agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing." 170 Ala. at 503, 54 So. at 204.
However, as seen from the above, the trial court did not base its judgment on a finding that the "letter agreement" was a binding agreement upon which specific performance could be enforced.
Therefore, we find no reversible error in this regard.
 II
The court decreed complainants recover $7,500 as damages suffered "due to their reliance upon the representation of the agreement by the Respondents." The record viewed in the most favorable light for Mr. Lang does not support such a decree, irrespective of whether premised on a theory of equitable estoppel or promissory estoppel.
The purpose of the former doctrine is to prevent inconsistency and fraud resulting from injustice. Fiscus v.Young, 243 Ala. 39, 8 So.2d 514. "`It rests at last for its vindication on the manifest idea that to allow such representation to be gainsaid would be fraud on him who had thus acted, believing it to be true.'" Cosby v. Moore, 259 Ala. 41,47, 65 So.2d 178, 182; Leinkauff v. Munter, 76 Ala. 194,198. The record in this case shows no misrepresentation or deliberate conduct designed to consciously and unfairly mislead Mr. Lang. The most that can be said is that Mr. Coley and Mr. Lang conducted negotiations which both parties hoped would eventually result in consummation of a contract. That the negotiations proved unfruitful does not *Page 75 
warrant application of equitable estoppel. For cases applying the doctrine see Dunn v. Fletcher, 266 Ala. 273, 96 So.2d 257;Birmingham Trust and Savings Co. v. Strong, 239 Ala. 118,194 So. 200, wherein the facts markedly differ from those herein. As stated by the Alabama Supreme Court in Messer v. City ofBirmingham, 243 Ala. 520, 524, 10 So.2d 760, 763, "A mere breach of promise cannot constitute an estoppel en pais." (Emphasis supplied.)
Neither do we deem promissory estoppel applicable.Restatement (First) of Contracts, § 90 (1932) states:
 "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Accord Bush v. Bush, 278 Ala. 244, 245, 177 So.2d 568, 570.
Assuming the existence of a promise on the part of Mr. Coley to purchase the name and stock of IAS, the record discloses no "action or forbearance of a definite and substantial character" on the part of Mr. Lang. The total time during which Mr. Lang could have curtailed his profit generating activities due to his reliance on Mr. Coley's promise extended only from September 1, 1972, the date of the signing of the documents by the parties, to September 18, 1972, when the negotiations were terminated. Moreover, Mr. Lang could testify with certainty only that he missed opportunities to bid on two contracts during the period. There was no evidence showing the probability that IAS's bid would have been the lowest in either instance. Furthermore, Mr. Lang attended at least one prebid conference during the eighteen-day period; and, presumably, he could have attended others. The circumstances of this case do not constitute the "substantial" forbearance or action in reliance contemplated by the Restatement. See Hoffman v. RedOwl Stores, Inc., 26 Wis.2d 683, 133 N.W.2d 267; Wheeler v.White, Tex., 398 S.W.2d 93.
It follows that the trial court misapplied the law to the facts in this case. King v. Earley, 274 Ala. 116,145 So.2d 831; Department of Industrial Relations v. Tomlinson,251 Ala. 144, 36 So.2d 496;Fulton Bag Cotton Mills v. Leder Oil Co.,207 Ala. 350, 92 So. 613.
Disposition of other issues is rendered unnecessary by our resolution of this issue.
The case is due to be and is, accordingly, reversed.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.