Appeal by Dixieland Food Stores, Inc., d/b/a Piggly Wiggly Food Store ("Dixieland"), defendant, from a judgment for plaintiffs, Dorothy S. Geddert and Nancy L. Ivey, in plaintiffs' action to recover possession of certain premises alleged to have been wrongfully retained by the defendant. We affirm.
The premises in question consisted of a grocery store building, together with its appurtenant areas and improvements, located in a shopping center in Monroeville. The defendant occupied the premises as assignee of the original lessee, one Louis Shaver. The original lease, prepared by the plaintiffs, was given on November 1, 1979, setting forth a monthly rental payment of $925, and, by its terms, expired on November 1, 1984. The terms of paragraphs 5, 10, and 18 of the lease gave rise to this controversy:
 "5. Lessee shall have an extension of this lease for a further period of five (5) years from its expiration date, the terms of which to be renegotiated at the time he shall give notice in writing that such extension is desired, such notice to be given not less than 180 days prior to the expiration date; and in the event that Lessee shall choose to extend the lease, then he shall have the right to a second extension of this lease for a five (5) year period, the terms thereof to be renegotiated at the time he shall give notice in writing that such extension is desired, and such notice being given not less than 180 days prior to the expiration date of the said first five year extension period.
". . . .
 "10. That unless the lessee does notify lessor prior to the expiration of the original term or any extension thereof of his intention to terminate this lease, he shall be deemed to have exercised his option to renew for the next ensuing term and shall not be required to give any further notice of his intention to exercise such option.
". . . .
 "18. Should the lessee remain in possession of the leased premises after termination of the term where there are no renewal privileges or after the expiration of the last renewal term where there are renewal privileges or give notice of his intention to terminate the lease at the expiration of the original term or any renewal term, and stay in possession of such premises after such termination, he shall be a tenant from month to month at the same rental and on the same conditions except as to term, as herein provided."
On December 12, 1980, the original lessee, Shaver, with the lessors' consent, assigned his interest in the leasehold to Dixieland. About nine months prior to the expiration of the original lease, the parties began negotiations for a renewal. In the course of these negotiations, plaintiffs prepared a proposed renewal agreement, which by its terms would have renewed the original lease with the following pertinent changes: (1) The term of the renewal was to run from November 1, 1984, through October 31, 1989 (5 years); and (2) The rental was to be $175,500, payable each month in the amount of $2,925. The proposed renewal agreement was mailed to Dixieland's owners on October 24, 1984. *Page 373 
Further negotiations ensued, with Dixieland's owners ultimately sending plaintiffs a letter on January 3, 1985, "confirming our telephone conversation" concerning the renewal lease and referring to certain other terms and amounts as rent. Specifically, this letter called for a "minimum annual rental" of $23,400 payable in monthly installments of $1,195, plus an amount equal to one percent of annual gross sales over $2,340,000 up to $3,640,000. This letter also referred to the necessity for having the lease agreement itself, once executed, reviewed and approved by the lessee's corporate officers. A proposed lease was then prepared by Mrs. Geddert and her lawyer and sent to Dixieland's owners, who executed it and returned it to Mrs. Geddert on March 11, 1985.
The plaintiffs themselves, however, did not execute the lease. Meanwhile, Dixieland remained on the premises and paid the $925 monthly rental called for under the original lease. It was Dixieland's company policy not to pay any increased rental until the renewal instrument had been executed by both parties.
Plaintiffs initiated this action in the district court of Monroe County under Code of 1975, § 35-9-80. That court issued a writ of possession to plaintiffs, subject to defendant's executing a sufficient counter affidavit, which Dixieland timely filed, alleging possession under a lease. Dixieland also moved to transfer the cause to circuit court, and that transfer ultimately took place. The case was tried ore tenus without a jury in the circuit court, which awarded plaintiffs a writ of possession and damages.
The trial court made findings of fact and reached certain conclusions of law. First, it found that the renewal agreement in question providing for a five-year lease was a contract falling within the Statute of Frauds, and, being unsigned by the plaintiffs, was unenforceable. It further found that, because defendant did not pay the increased rental contemplated by that agreement, there had been no part performance sufficient to avoid the Statute.
The trial court also found that by the language of paragraphs 5 and 10 in the original lease, the option to renew amounted to "an agreement to agree in the future," and thus was void.
Finally, the trial court held that there was no estoppel against the plaintiffs in these circumstances because the defendant did not rely upon the terms of the renewal agreement by paying any increased rent, and thus did not act thereon to its detriment.
In accord with these conclusions, the trial court held that upon the expiration of the original lease, defendant became a tenant from month to month, and after 30 days' notice to quit following expiration of its lawful term became liable for double the customary rent, under Code of 1975, § 35-9-100.
The trial court was correct in its analysis of the option provision in the 1979 lease. The provision provided for "an extension" of the lease, "the terms of which to be renegotiated at the time he shall give notice in writing that such extension is desired." This choice of language makes it plain that no definite terms were agreed upon, but that, indeed, the terms of the "extension" or "renewal," except for the length of the lease, were to be agreed upon at a later time. An agreement to agree later is unenforceable. Clanton v. Bains Oil Co.,417 So.2d 149 (Ala. 1982); Coley v. Lang, 339 So.2d 70
(Ala.Civ.App. 1976); Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190 (1943). See also 51C C.J.S. Landlord Tenant § 56(3) (1968). We have no power to give this provision an interpretation which would be contrary to the requirements of the Statute of Frauds. Thus, this provision of the 1979 lease was unenforceable.
The trial court was correct, moreover, in determining that the 1985 lease came within the Statute of Frauds, Code of 1975, § 8-9-2(1), and was required to be signed by the party to be charged. The parties to be charged in this case were the lessors, since it is against them that the terms of the renewal lease are sought to be imposed. Hammond v. Winchester, 82 Ala. 470,2 So. 892 (1887). Since the negotiations between the parties did not result in a document signed by both lessors, the "renewal" *Page 374 
lease was never executed, as conceded by Dixieland, which, in accord with its "company policy," did not pay the increased rent called for by the renewal lease.
Was there such part performance under an oral 1985 lease agreement, which followed the expiration of the 1979 lease, to take the case out of the Statute of Frauds? Code of 1975, §8-9-2(5). If Dixieland was put in possession by the lessors and paid the purchase money (rent) or a portion of it, the exception to the Statute of Frauds would have been satisfied. Under the facts, that did not occur, however. Dixieland clearly continued to pay the installments of rent under the 1979 lease, not the 1985 lease. It is conceded by Dixieland, indeed, that it "continued to pay the original amount of $925 per month," the rental under the original lease, and not an amount calculated by the terms of the proposed renewal lease. This was not payment of the "purchase money" called for by the "oral agreement" under which it now claims lawful possession, but was rent to be paid under the original, or 1979, lease.
In order to satisfy the requirements of the exception, the possession must be exclusively referable to the contract in issue. Jones v. Jones, 219 Ala. 62, 121 So. 78 (1929). And,
 "a possession taken as lessee, and continued without visible change, does not tend to prove that such occupant was put in possession by the owner, and is not an act tending to give notice of a change of holding [under a new lease]. McCarthy v. Nicrosi, 72 Ala. 332."
Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734 (1967). Dixieland's possession after the expiration of the 1979 lease term was consistent with that 1979 lease, not with the proposed 1985 lease.
Additionally, the trial court was not in error in finding that no promissory estoppel occurred in favor of Dixieland.
Promissory estoppel as defined in Restatement (First) ofContracts § 90 (1932), has been accepted by Alabama courts,Coley v. Lang, 339 So.2d 70 (Ala.Civ.App. 1976), and Bush v.Bush, 278 Ala. 244, 177 So.2d 568 (1964):
 "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
Under the facts of this case, it is clear that the plaintiffs, Geddert and Ivey, are not estopped to deny the alleged 1985 oral agreement. That is so because Dixieland was not induced to take any action, nor did it forbear to do so, to its detriment. Quite to the contrary, Dixieland merely continued in possession under the 1979 lease, paying rent under that lease, waiting for the lessors to return the executed lease in order that its corporate officers might approve it, as explained by it in its letter of January 3, 1985. Thus, there was no reliance and change of position as required for promissory estoppel.
Finally, we cannot agree with Dixieland that the trial court erred in not holding the 1979 lease vague, and thus construing it in its favor. Dixieland's argument is that paragraphs 5 and 10, when read together, conflict in their notice requirements, and thus that the interpretation to be given them is that the parties agreed to extend the 1979 lease term.
We find no conflict in the two provisions. Paragraph 5 describes the form of notice required of the lessee should he elect to extend the lease. Paragraph 10, on the other hand, complements paragraph 5 by referring to an extension of the lease, absent any notice by the lessee of his intention to terminate the lease. We find no ambiguity in these terms, and we note, moreover, that notice, or lack of it, was not made an issue in the court below.
It follows that the judgment of the trial court must be, and it is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur. *Page 375