The plaintiffs, SGB Construction Services, Inc. ("SGB"), and Shore/Form Systems, Inc. ("Shore/Form"), appeal from a summary judgment for the defendants, Ray Sumlin Construction Company, Inc. ("Ray Sumlin"), Hartford Fire Insurance Company ("Hartford"), Mobile Infirmary Medical Center ("the Infirmary"), and Port City Medical Clinic Board of Mobile, Alabama ("the Board"), in this action seeking damages for an alleged failure to pay for leased construction equipment. We affirm in part, reverse in part, and remand.
SGB, a foreign corporation licensed to do business in Alabama, leases concrete forming and shoring equipment. Shore/Form, a foreign corporation not licensed to do business in Alabama, is a distributor of SGB equipment operating out of Florida. The Infirmary and the Board contracted with Ray Sumlin to build a parking deck at the Infirmary; Hartford was the surety on Ray Sumlin's payment bond. Shore/Form shipped equipment by common carrier from its plant in Florida to the construction site in Mobile, pursuant to a "purchase order" signed by representatives of the Infirmary and the Board. This "purchase order" was actually the culmination of a leasing arrangement negotiated by Shore/Form and Ray Sumlin. After a dispute arose as to the amount of rent due for the use of the equipment, Shore/Form and SGB filed this action seeking payment on the bond, pursuant to Ala. Code 1975, § 39-1-1(b), and damages for breach of contract. The trial court held that, because it was not qualified to do business in Alabama, Shore/Form was precluded, as a matter of law, from suing in an Alabama court. The trial court also held that the defendants were entitled to a judgment as a matter of law with respect to SGB's claims, on the ground that SGB had provided no equipment to, and had no contractual relationship with, any of the defendants.
Our standard of review of a summary judgment is well settled. The summary judgment was proper if there was no genuine issue of material fact and the defendants were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The burden was on the defendants to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. If they made that showing, then the burden shifted to SGB and Shore/Form to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. In determining whether there was a genuine issue of material fact, we must view the evidence in a light most favorable to SGB and Shore/Form and must resolve all reasonable doubts against the defendants. Because this case was not pending on June 11, 1987, we must apply the "substantial evidence" rule. Ala. Code 1975, § 12-21-12.Mixon v. Houston County, 598 So.2d 1317 (Ala. 1992).
 Shore/Form
Article XII, § 232, of the Alabama Constitution of 1901, and Ala. Code 1975, §§ 10-2A-247 and 40-14-4, bar a foreign corporation not qualified to do business in Alabama from enforcing its contracts in the courts of this state. These laws apply, however, *Page 894 
only when the business conducted in this state by the nonqualified corporation is intrastate in nature. A nonqualified foreign corporation is not barred from enforcing its contracts in Alabama when its activities within this state are incidental to the transaction of interstate business.Wallace Construction Co. v. Industrial Boiler Co.,470 So.2d 1151 (Ala. 1985). When the activities of a foreign corporation are interstate in nature, then its doing business here is protected by the Commerce Clause of the United States Constitution, and Alabama's nonqualifying laws, which otherwise might interfere with or prohibit the business, are inapplicable. Joison Ltd. v. Taylor, 567 So.2d 862
(Ala. 1990).
The defendants contend that the summary judgment was proper, relying primarily on the fact that the equipment was to be used on a construction site in Alabama pursuant to a lease solicited in Alabama. Shore/Form insists, however, that its solicitation of business in Alabama and its shipment of equipment into this state pursuant to an equipment lease was not intrastate business activity, and therefore did not preclude it from suing in an Alabama court. We agree with Shore/Form and reverse the summary judgment with respect to its claims.
The undisputed evidence in this case shows that Shore/Form actively sought to lease SGB equipment for use in the construction of the Infirmary's parking deck and that it was eventually successful in that endeavor. Shore/Form shipped the equipment by common carrier from its Florida plant to the Mobile construction site. Shore/Form had no offices or plants in Alabama, kept no employees here on a permanent basis, and was not involved in any respect with the actual construction of the parking deck in Mobile. These facts are not sufficient under Alabama law to support the trial court's conclusion that Shore/Form was engaged in the transaction of intrastate business. This Court has consistently held that the mere solicitation of business in Alabama and business contacts incidental thereto do not constitute the transaction of intrastate business. Furthermore, where a transaction requires only the sale or lease of goods and a delivery of those goods into Alabama, we have held it to be within the scope of interstate commerce. See Wise v. Grumman Credit Corp.,603 So.2d 952 (Ala. 1992); Joison Ltd. v. Taylor, supra; North Alabama Marine, Inc. v. Sea Ray Boats,Inc., 533 So.2d 598 (Ala. 1988); Wallace ConstructionCo. v. Industrial Boiler Co., supra; Johnson v. MPLLeasing Corp., 441 So.2d 904 (Ala. 1983); KentuckyGalvanizing Co. v. Continental Casualty Co., 335 So.2d 649
(Ala. 1976); Houston Canning Co. v. Virginia Can Co.,211 Ala. 232, 100 So. 104 (1924).
Based on the aforementioned cases, particularly Johnsonv. MPL Leasing Corp. and Houston Canning Co. v.Virginia Can Co., we hold that Shore/Form was not engaged in the transaction of intrastate business when it leased the equipment. Thus, its activities did not implicate the "door closing" provisions of § 232 of the Alabama Constitution and §§ 10-2A-247 and 40-14-4, Ala. Code 1975.
 SGB
The trial court ruled, as a matter of law, that SGB had no contract with any of the defendants (specifically, it held that there was no evidence of mutual assent to contract between SGB and any of the defendants); it held, therefore, that SGB could not go forward with its contract claim. SGB contends, however, that there is at least a fact question as to whether it had an agreement with one or more of the defendants on which it could base a legal claim. Specifically, SGB points to the delivery tickets that accompanied the shipment of the equipment from Shore/Form to the construction site and the invoices that SGB later sent to the Board. Each of the delivery tickets was addressed to Ray Sumlin and carried in bold print at the top: "SGB" and "SGB Construction Services, Inc." Shore/Form's name and address appeared in regular print immediately under the reference to SGB. Each of the delivery tickets also contained the following statement at the bottom of the page: "This sale or delivery is subject to the terms and conditions as listed on the reverse side of this document." The back side of the ticket contained a proposed 17-paragraph contract that, among other things, designated SGB as the lessor of the *Page 895 
equipment and directed the "customer" to make its rental payments directly to SGB. Each of the invoices that SGB later sent to the Board, in care of Ray Sumlin, carried in bold print the "SGB" logo and directed that payment be "Remit[ted] to SGB Construction Services, Inc. . . . Houston, Tx." Each of the invoices also showed the "shipping location" as being "Shore/Form Systems, Inc. . . . Palmetto, FL.," and noted that the equipment "[remained] on lease until returned to our yard." There is no indication that either the Board or Ray Sumlin ever questioned SGB's direct involvement in the transaction, and, in fact, the Board paid the rent due on the equipment directly to SGB in Texas.
After carefully examining the record in this case, we agree with the trial court that there is no evidence of a contract between SGB and the Infirmary. Because there appears to have been no communication whatever between SGB and the Infirmary, we affirm the summary judgment with respect to this aspect of SGB's claim. We agree with SGB, however, that the summary judgment with respect to its contract claim against the Board and against Ray Sumlin was improper.[1] It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions. Conduct of one party from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance. Deeco, Inc. v. 3-MCo., 435 So.2d 1260 (Ala. 1983). In the present case, we cannot hold, as a matter of law, that neither the Board nor Ray Sumlin had a contractual relationship with SGB. Neither the Board nor Ray Sumlin objected to the contract language incorporated into the delivery tickets or to SGB's direct involvement in the transaction. In fact, the Board made rental payments directly to SGB at SGB's request. Because we cannot agree with the trial court's conclusion that, as a matter of law, SGB had no contract with either the Board or Ray Sumlin, we reverse the summary judgment with respect to that aspect of SGB's contract claim.[2]
As to SGB's statutory claim on the payment bond, Ala. Code 1975, § 39-1-1(b), provides, in pertinent part, as follows:
 "Any person, firm or corporation that has furnished labor, materials or supplies for or in the prosecution or repair of any public building or public work, highways or bridges and payment on which has not been made shall be authorized to institute a civil action upon said bond in his or their name or names and to have their rights and claims adjudicated in such civil action and judgment entered thereon; provided, that no civil action shall be instituted on said bond until after 45 days' written notice to the surety thereon of the amount claimed to be due and of the nature of the claim. Such civil action shall be commenced not later than one year from the date of final settlement of said contract."
The purpose of the public works bond statute is to ensure that a materialman receives full payment for labor or materials that he supplies to a public works project. The statute does not require that the materialman be in privity of contract with the primary contracting parties. See Sumlin v. Hagan StormFence Co. of Mobile, 409 So.2d 818 (Ala. 1982). The trial court found that the Board is a public agency incorporated under Ala. Code 1975, § 11-58-1 et seq., and that the Board had a duty under § 39-1-1 to require a bond from Ray Sumlin inuring to the benefit of subcontractors and materialmen. SeeMedical Clinic Board of the City of Birmingham-Crestwood v.Smelley, 408 So.2d 1203 (Ala. 1981). The record shows that SGB furnished the concrete forming and shoring equipment for use in the construction of the Infirmary's parking deck. As we understand *Page 896 
the evidence, Shore/Form acted only as a distributor of SGB equipment. Furthermore, the evidence shows that SGB gave the requisite 45 days' notice to Hartford. In addition, the defendants admitted in their answer to the complaint that SGB had sued within one year from the date of the final settlement of the construction contract. It appears, therefore, that even if SGB is found to have had no contractual relationship with the Board or Ray Sumlin, SGB still has a claim under §39-1-1(b). We conclude that with respect to SGB's action on the bond the summary judgment was improper and is due to be reversed.
For the foregoing reasons, the judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.
[1] We assume from the facts of this case that SGB does not allege that Hartford is liable for a breach of the equipment lease. The record indicates that Hartford was simply the surety on Ray Sumlin's payment bond and that it was named as a defendant with respect to SGB's claim under §39-1-1(b).
[2] SGB also argues that the evidence was sufficient to support a claim for damages for breach of an implied contract, as well as a claim for damages under a third-party beneficiary theory. However, our review of the record indicates that SGB did not sufficiently plead or argue these theories of recovery in the court below, so as to be able to argue them now on appeal.