DONALDSON, Judge.
Sabrina Gail Walker (“the wife”) appeals from a divorce judgment of the DeKalb Circuit Court (“the trial court”), entered pursuant to a purported agreement between the wife and Steve Allen Walker (“the husband”), and from the denial of the wife’s postjudgment motion for a new trial or to alter, amend, vacate, or clarify the judgment. Because we hold that the parties failed to reach an enforceable agreement, we reverse and remand.

Facts and Procedural History

The wife filed a complaint for a divorce on September 14, 2011. The husband filed an answer and a counterclaim for a divorce. The wife and the husband have a daughter (“the daughter”) who was 16 years old at the time the divorce proceedings were initiated. Both parties were represented by counsel throughout the proceedings.
A bench trial was scheduled to begin on April 26, 2012. On that date, following discussions between counsel for the parties before the beginning of the trial, counsel informed the trial court that the parties had reached a settlement on all issues. In open court and on the record, the husband’s attorney announced the terms of the purported agreement in the presence of the husband, the wife, and the wife’s attorney. The statement addressed the custody of the daughter, child support, alimony, property distribution, allocation of debt, and other topics. Pursuant to the proposed property distribution, the wife was to be awarded an automobile, a shop, most of the parties’ household furnishings, and the marital residence, subject to the obligation of the wife to refinance the mortgage indebtedness on the residence within 60 days. The husband’s attorney described the wife’s obligation to refinance the mortgage as follows:
“The [wife] will be awarded the marital residence. There is some indebtedness owed to, I think, Regions Bank. She will refinance that within 60 days. And there is a shop on there, and the [husband] will have up to a year to remove [his belongings from] the shop.”
The husband was to be awarded a construction business, equipment, and real estate located in an area described as “Dug Out Valley.” The parties were to divide various personal effects. The husband was to execute a release absolving the wife of liability for her allegedly fraudulent conduct regarding a business. The wife was to forgive any debt the husband owed on the daughter’s automobile.
Separate from the Dug Out Valley real estate, the parties jointly own 2 parcels of real estate, a 32-acre tract and a 1.5 acre tract on Sand Mountain (“the Sand Mountain properties”). Regarding the distribution of the Sand Mountain properties, the husband’s attorney stated:
“[The husband] will be awarded the property that’s in [Dug Out V]alley. The 32 acres and the one and a half acres that are on Sand Mountain — those two properties will ultimately go to their daughter, and [the wife’s attorney] and I *362 will work on the language to make that happen.”
In the postjudgment proceedings before the trial court and on appeal, the husband disputes the punctuation contained in the reporter’s transcript on this issue. According'to the husband, the court reporter, among other things, mistakenly inserted a period, instead of a comma, after the word “valley,” and, he asserts, the transcript should read as follows:
“[The husband] will be awarded the property that’s in [Dug Out V]alley, the 32 acres, and the 1 and a half acres that are on Sand Mountain. Those two properties, the last two, will ultimately go to their daughter, and [the wife’s attorney] and I will work on the language to make that happen.”
After the husband’s attorney stated the terms of the purported agreement, the trial court questioned each party as follows:
“THE COURT: All right. [Husband], you have heard your attorney state the settlement for the record. Is that, in fact, your agreement?
“[HUSBAND]: Yes.
“THE COURT: [Wife], is that your agreement?
“[WIFE]: Yes.
“THE COURT: All right, well, the attorneys will prepare an order for me, and they will both, you know, make sure that it’s correct and send it to me, and I’ll sign it.”
The wife then testified under oath to establish the grounds for granting the divorce.
Following the proceedings in court on April 26, counsel for the parties began corresponding with each other regarding the language of the proposed written order that would be submitted to the trial court for adoption as the final judgment of divorce. The husband’s attorney drafted a proposed written order that awarded title to the Sand Mountain properties to the husband. Paragraph 20 of that proposed order stated: “The [husband] cannot sell, transfer, or otherwise convey either tract to anyone other than the minor child. The [husband] may, however, encumber, mortgage, or otherwise pledge the two tracts as collateral as part of Steve Walker Construction.” The wife’s attorney responded to that proposal with a letter that, among other things, took issue with paragraph 20 and stated: “[The wife] didn’t agree that [the husband] could mortgage, pledge etc[.] the 32 acre tract and the 1 acre tract [presumably the Sand Mountain properties]. That is supposed to go to [the daughter] as soon as it is released from the current mortgage.” The husband’s attorney replied with a facsimile that stated, in part: “I deleted the fourth and fifth sentenced] in paragraph 20. There was never any mention that the property was going to [the daughter] as soon as it is released from the current mortgage. It was not stated in the court record.” The wife, through counsel, continued to object to the husband’s proposed order awarding him title to the Sand Mountain properties, and she refused to sign proposed deeds that would transfer title to the Sand Mountain properties to the husband. The husband then filed a “Motion to Enforce Final Decree” with the trial court, and he attached a proposed order containing the following language:
“20. The [husband] shall be awarded the Dug Out Valley properties, the one (1) acre tract, and the 32 acre tract. The [wife] shall execute whatever documents are necessary to effectuate same. The parties daughter, [C.M.W.], shall ultimately receive the one (1) acre tract and the 32 acre tract.”
*363 On June 25, 2012, the trial court held a hearing on the husband’s motion to enforce. During the hearing, the husband testified that his understanding of the settlement agreement announced in court on the date of the trial was that he was to be awarded the Sand Mountain properties and that they were to be titled in his name only. He agreed that the intention of both parties was that the daughter would ultimately receive the Sand Mountain properties, but he testified that the transfer would occur only “when [he] thought it was time for her to have [them].” Under cross-examination, the husband testified that his understanding of the agreement was that the daughter would receive the Sand Mountain properties when she reached an unspecified “appropriate” age. He testified that he intended for “her to have [the Sand Mountain properties] when she’s of age and can take [them]. I don’t want [the wife] having nothing to do with it.” He admitted to having extracted topsoil from the Sand Mountain properties following the announcement of the agreement on April 26.
The wife retained a new attorney before the hearing on the motion to enforce, and the attorney who had represented the wife during the settlement negotiations testified for the wife at the hearing. The attorney testified that his understanding of the parties’ settlement agreement was that the parties had intended for the daughter to receive the Sand Mountain properties upon the refinancing of the mortgage on the marital residence, i.e., when the husband was released from the mortgage indebtedness. The attorney testified that the wife had not agreed to transfer title to the Sand Mountain properties to the husband at any time and that during the negotiations the parties had not discussed deferring the transfer to the daughter for a number of years or allowing the husband to use the land for extracting topsoil. He testified that the term “ultimately,” which qualified the transfer to the daughter in the purported agreement announced on April 26, was not otherwise defined by the parties in their negotiations.
The wife testified that her understanding of the settlement agreement was that the conveyance to the daughter would not be immediate because she needed to refinance the mortgage on the marital residence first. Her understanding was that the daughter would receive the Sand Mountain properties as soon as the refinancing of the marital residence occurred. The wife stated that she did not agree, and would not have agreed, to award the husband unencumbered real property (the Sand Mountain properties) while she received the marital residence encumbered with a refinanced mortgage. She also claimed that during the negotiations she had been under duress and heightened anxiety caused by a lack of medication and by allegations of fraud and embezzlement lodged against her by the husband.
On July 10, 2012, the trial court entered an order granting the husband’s motion to enforce, concluding that the parties had reached a binding, enforceable agreement at the April 26, 2012, hearing and that the proposed written order submitted by the husband “accurately sets out the agreement of the parties as stated on the record on April 26, 2012.” The trial court entered the proposed order submitted by the husband as its final judgment.
On August 9, 2012, the wife filed a motion for a new trial or to alter, amend, vacate, or clarify the judgment. The trial court subsequently denied the motion, and the wife timely appealed to this court. On appeal, the wife claims the trial court erred 1) by awarding the Sand Mountain properties to the husband and leaving him sole discretion over the timing of the con *364 veyance of those properties to the daughter; 2) by not altering, amending, or' clarifying the divorce judgment to provide for a reasonable manner and time for conveying the Sand Mountain properties to the daughter; and/or 3) by not vacating the judgment on the ground that no “meeting of the minds occurred” and/or on the grounds of inequity or duress.

Standard of Review

“ ‘ “[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.” ’ ” Egres v. Egres, 85 So.3d 1026, 1031 (Ala.Civ.App. 2011) (quoting R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000), quoting in turn Smith v. Smith, 568 So.2d 838, 839 (Ala. Civ.App.1990)). When the facts material to the question whether a contract was formed are in dispute, the fact-finder must resolve that dispute. Sunnyland Mobile Homes, Inc. v. Thompson, 384 So.2d 1111 (Ala.Civ.App.1980). However, when the facts material to the question whether a contract was formed are undisputed, the existence of a contract is a question of law for the court. See, e.g., Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 479, 144 So. 86, 91 (1932) (noting that whether an offer has been accepted is a question of law for the court when the facts are undisputed and a question of fact for the fact-finder when the facts are disputed or subject to inferences that could be drawn). Further, whether a contract fails for indefiniteness is a question of law. White Sands Grp., L.L.C. v. PRS II, LEG, 998 So.2d 1042, 1052 (Ala.2008). This court reviews a trial court’s legal conclusions de novo. Henderson v. Henderson, 978 So.2d 36, 39 (Ala.Civ.App.2007).

Discussion

The husband contends that the parties reached an enforceable agreement and that the trial court properly enforced the agreement by incorporating it into the divorce judgment. As one of her grounds challenging the judgment, the wife contends that there was no enforceable agreement reached on April 26, 2012, because, she says, no “meeting of the minds” occurred regarding the disposition of the Sand Mountain properties.
“The elements of a valid contract include: ‘ “an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.’”” Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala.2009) (quoting Ex parte Grant, 711 So.2d 464, 465 (Ala.1997), quoting in turn Strength v. Alabama Dep’t of Fin., Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)). “The rule is that the minds of the parties must meet as to all the essential features of a contract.” Air Conditioning Eng’rs, Inc. v. Small, 259 Ala. 171, 175, 65 So.2d 698, 703 (1953)(cit-ing Cochran Lumber Co. v. Paterson & Edey Lumber Co., 202 Ala. 366, 80 So. 448 (1918); Bissinger v. Prince, 117 Ala. 480, 23 So. 67 (1898); and Hodges v. Sublett, 91 Ala. 588, 8 So. 800 (1891)). “Under Alabama law, ‘whether parties have entered a contract is determined 'by reference to the reasonable meaning of the parties’ external and objective actions’.... ” Consolidated Pipe & Supply Co. v. City of Bessemer, 69 So.3d 182, 190 (Ala.Civ.App. 2010) (quoting SGB Consto'. Servs., Inc. v. Ray Sumlin Cooistr. Co., 644 So.2d 892, 895 (Ala.1994)).
“[Settlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement or when the parties have merely agreed to later agree.” Grayson v. Hanson, 843 So.2d 146, 150 (Ala.2002) (citations omitted). “ ‘[A] contract that “ ‘leavfes] material portions open for future agreement is nugatory and void for *365 indefiniteness.’ ” ’ ” White Sands Grp., 998 So.2d at 1051 (quoting Miller v. Rose, 138 N.C.App. 582, 587-88, 532 S.E.2d 228, 232 (2000), quoting in turn MCB Ltd. v. McGowan, 86 N.C.App. 607, 609, 359 S.E.2d 50, 51 (1987), quoting in turn Boyce v. McMahan, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)).
The record indisputably shows that both parties intended for their daughter to receive title to the Sand Mountain properties, and, thus, a provision reflecting that intent was material to any agreement. Counsel for the husband stated on the record on April 26, 2012, that the daughter would “ultimately” receive the Sand Mountain properties, but that statement did not specify any other terms, including the proposed manner and timing for the conveyance. Instead, the husband’s counsel stated that counsel for both parties “will work on the language to make [the transfer] happen.” The subsequent correspondence between counsel established that the parties were in conflict at all times over the terms for conveyance in the proposed order. Although the fact-finder must resolve any issue of disputed fact, the undisputed evidence before the trial court showed that no meeting of the minds occurred regarding the Sand Mountain properties at the April 26, 2012, hearing. Parties commonly reach oral agreements that will subsequently be reduced to writing by counsel and submitted to the trial court for incorporation into a judgment. This common situation differs from the present case, in which the evidence reflects that the parties did not reach an enforceable agreement but, instead, expressed their intention to reach an agreement regarding the Sand Mountain properties. When considered in conjunction with the undefined term “ultimately,” the statement that counsel would subsequently “work on the language to make [the transfer] happen” constituted only an expression that the parties intended to reach a subsequent agreement that obtained the desired result of having the Sand Mountain properties conveyed to the daughter. “ ‘[A]n agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing.’ ” Coley v. Lang, 339 So.2d 70, 74 (Ala.Civ.App.1976) (quoting Elmore, Quillian & Co. v. Parish Bros., 170 Ala. 499, 503, 54 So. 203, 204 (1911)). In Coley, this court quoted with approval from Onyx Oils & Resins v. Moss, 367 Pa. 416, 420, 80 A.2d 815, 817 (1951):
“ ‘In Nicholls v. Granger, 1896, 7 App. Div. 113, [116,] 40 N.Y.S. 99, 101, the court pertinently stated, “It is undoubtedly true that a stipulation to reduce a valid contract to some other form does not affect its validity, and that although it is in contemplation of the parties that a more formal contract shall be executed.... But it is an essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms, as well as the subject matter, of the contract .... ”
“‘We cannot enforce a portion of an agreement which failed to materialize; nor can we supply the terms of this contract.’ ”
Coley v. Lang, 339 So.2d at 74.
The undisputed facts do not support a finding that a meeting of the minds occurred between the parties on April 26, 2012, and, therefore, the husband’s motion to enforce should not have been granted. The placement of a comma or period in the reporter’s transcript does not affect the result because the parties’ clearly expressed intention to subsequently agree upon the timing of the conveyance to the daughter applies to either interpretation. The parties contemplated material and es *366 sential terms of an agreement, but they never reached an agreement on the essential elements of the timing and manner of conveyance of the Sand Mountain properties to the daughter. The purported settlement agreement was an unenforceable agreement to later agree. The parties’ correspondence and testimonies after the announcement of the purported agreement revealed different intentions regarding the timing and manner for conveying the Sand Mountain properties. For these reasons, we hold that the trial court erred in granting the husband’s motion to enforce the settlement agreement regarding the Sand Mountain properties because the parties never reached an enforceable agreement on that issue.
We turn next to the question whether the remaining portions of the agreement announced on April 26, 2012, can be separately enforced, leaving only the issue of disposition of the Sand Mountain properties to be tried, or whether the matter must be remanded for a trial on all issues. The wife submits on appeal that the testimony before the trial court at the hearing on the motion to enforce established that the disposition of the Sand Mountain properties was interrelated with the other provisions of the proposed settlement, including but not limited to the amount of alimony to be awarded and the disposition of other property. She argues in her brief:
“A failure to have a meeting of the minds results in an invalid contract. See Pirtle v. Harris, 338 So.2d 1018 (Ala.Civ.App.1976). Because the agreement meant One thing in the mind of the wife and another in the mind of the husband, there was no agreement. Id. The terms of the conveyance-of property to the daughter were of the highest significance to the parties. With no agreement on that primary issue[,] the judgment of the trial court should be reversed and the case sent back for a trial on the whole divorce.”
Testimony presented at the motion-to-enforce hearing supports this argument; there is no evidence in the record before us to the contrary; and the husband does not argue that the agreement was severa-ble. Accordingly, we reverse the trial court’s judgment and remand this cause for further proceedings consistent with this opinion.
The motions for attorney fees filed by both parties are denied.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.